667 So.2d 433 (1996)
The STATE of Florida DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES (DHSMV), Appellant,
v.
W.B. KILLEN, Appellee.
No. 94-2215.
District Court of Appeal of Florida, Fourth District.
January 24, 1996.
Robert A. Butterworth, Attorney General, Tallahassee, and Charles M. Fahlbusch, Assistant Attorney General, Hollywood, for appellant.
Jack A. Goldberger of Atterbury, Goldberger and Richardson, P.A., West Palm Beach, for appellee.
SCHAPIRO, SHELDON M., Associate Judge.
On November 23, 1994, appellant, the Florida Department of Highway Safety and Motor Vehicles, filed a verified complaint for probable cause and for final order of forfeiture seeking forfeiture of certain items which *434 were seized from appellee's automobile on October 11, 1993, during a routine traffic stop. Following an adversarial preliminary hearing, the trial court entered an Order Finding Probable Cause and a Rule to Show Cause finding that there was probable cause to believe that the property subject to forfeiture was "contraband article" as defined by the relevant statutes. Thereafter, appellee filed a motion to dismiss the verified complaint. Following a hearing, the trial court entered an order granting appellee's motion to dismiss and made the following findings:
This cause came on to be heard upon the Claimant's motion to dismiss. The facts upon which the motion is based is [sic] as follows:
On October 11, 1993, the Claimant, W.B. Killen, was stopped in the automobile he was driving for speeding through a construction zone, failure to use turn signals, and for not wearing a seat belt. A civil traffic infraction for not wearing a seat belt was issued to the Claimant, W.B. Killen. The Claimant, W.B. Killen was issued a warning for speed too fast for conditions. The Claimant, W.B. Killen, was not arrested for any criminal offense. However a search of the automobile was done pursuant to a consent by the Claimant, W.B. Killen, and $80,889.00 was seized after a drug detection dog alerted to the money.
The Claimant, W.B. Killen, in his Motion to Dismiss, cites Florida Statute 321.05 setting forth the duty functions and powers of the Florida Highway Patrol. In relevant part, the Statute states that "no search shall be made unless it is incident to a lawful arrest". (Emphasis added) The Court finds that since this search was not incident to a lawful arrest and since Florida Statute 321.05 limits the authority of Florida Highway Patrol to making searches only incident to lawful arrest, the search in the instant cause was improper.
Since the trial judge based his granting of the appellee's motion to dismiss on the alleged restrictions of section 321.05, Florida Statutes (1993), an examination of the statute is necessary. Section 321.05, which relates to the duties, functions, and powers of Florida Highway Patrol officers, provides in pertinent part:
The members of the Florida Highway Patrol are hereby declared to be conservators of the peace and law enforcement officers of the state, with the common law right to arrest a person who, in the presence of the arresting officer, commits a felony or commits an affray or breach of the peace constituting a misdemeanor, with full power to bear arms; and they shall apprehend, without warrant, any person in the unlawful commission of any of the acts over which the members of the Florida Highway Patrol are given jurisdiction as hereinafter set out and deliver him to the sheriff of the county that further proceedings may be had against him according to law. In the performance of any of the powers, duties, and functions authorized by law, members of the Florida Highway Patrol shall have the same protections and immunities afforded other peace officers, which shall be recognized by all courts having jurisdiction over offenses against the laws of this state, and shall have authority to apply for, serve, and execute search warrants, arrest warrants, capias, and other process of the court in those matters in which patrol officers have primary responsibility, set forth in subsection (1). The patrol officers under the direction and supervision of the Department of Highway Safety and Motor Vehicle shall perform and exercise throughout the state the following duties, functions, and powers:
(1) To patrol the state highways and regulate, control, and direct the movement of traffic thereon; to maintain the public peace by preventing violence on highways; to apprehend fugitives from justice; to enforce all laws now in effect regulating and governing traffic, travel, and public safety upon the public highways and providing for the protection of the public highways and public property thereon; to make arrests without warrant for the violation of any state law committed in their presence in accordance with the laws of this state; providing that no search shall be made unless it is incident to a lawful arrest, to regulate and direct traffic concentrations and congestions ... to investigate *435 reported thefts of vehicles and to seize contraband or stolen property on or being transported on the highway.
(Emphasis added.) The underlined portions are relevant to the trial court's dismissal order since the order recited only that "no search shall be made unless it is incident to a lawful arrest." This phrase was taken out of context.
In Thayer v. State, 335 So.2d 815, 817 (Fla. 1976), the Florida Supreme Court stated:
The law clearly requires that the legislative intent be determined primarily from the language of the statute because a statute is to be taken, construed, and applied in the forms enacted. Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918); Vocelle v. Knight Bros. Paper Co., 118 So.2d 664 (Fla. 1st DCA 1960). The reason for this rule is that the Legislature must be assumed to know the meaning of words and to have expressed its intent by the use of the words found in the statute.
An examination of the legislative history of Florida Statute 321.05 is therefore necessary to determine the Legislature's intent in the current enactment of said statute. The last expression of the Legislature will prevail in cases of conflicting statutes. State v. Dunmann, 427 So.2d 166 (Fla. 1983), receded from on other grounds, Daniels v. State, 587 So.2d 460 (Fla. 1991). The 1955 version of 321.05(1), states in part:
to make arrests without warrant for the violation of any state criminal law committed upon the right-of-way of any public road, such arrest may be made only when the offense is committed in the presence of such director or patrol officer, but no arrest shall be made without probable cause nor any search made not necessarily appropriately incident to making effective lawful arrest....
Section 321.05(4), Florida Statutes (1955), provides in part:
The members of the patrol shall not have the right or power of search nor shall they have the right or power of seizure, except as permitted by this section; providing nothing herein shall be construed as limiting the power to locate and to take from any person under arrest or about to be arrested deadly or dangerous weapons.
In 1971, the Florida Legislature, by the enactment of Ch. 71-275, Laws of Florida, amended the previous statute into its present form. It is safe to assume that unless contrary indication appears, the Legislature intended the amended statute to have a meaning different from that accorded to it before the amendment. See U.S. Fire Ins. Co. v. Roberts, 541 So.2d 1297, 1299 (Fla. 1st DCA 1989). Another rule of construction which is designed to assist in determination of legislative intent, is the rule that laws should be construed together with any other law relating to the same purpose, so that they are in harmony, and courts should avoid construction which places in conflict statutes which cover the same general field. City of Boca Raton v. Gidman, 440 So.2d 1277 (Fla. 1983).
An examination of section 321.05, Florida Statutes (1993), reveals that the Legislature has designated Florida Highway Patrol Troopers as conservators of the peace and law enforcement officers of the state, with common law arrest powers. At the end of the section, the Legislature specifically authorizes members of the highway patrol "to investigate reported thefts of vehicles and to seize contraband or stolen property on or being transported on the highways." In order "to seize contraband," a trooper must have the capability of conducting searches which are not incident to a lawful arrest, such as a valid consent search, or an "inventory" search of an abandoned or seized motor vehicle. A search conducted pursuant to a valid consent of a vehicle's driver, as in the case at bar, is recognized as an exception to the warrant requirement of the Fourth Amendment to the United States Constitution. See Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). There is no clear indication that the Florida Legislature, by the enactment of section 321.05, Florida Statutes (1993), intended to deprive highway patrol troopers of the ability to validly conduct searches which were not incident to a lawful arrest, but which came under section 901.151(5), Florida *436 Statutes (1993) (Florida stop and frisk law); valid inventory searches of abandoned or seized vehicles; or valid searches based on "emergencies" or other exigent circumstances. These warrantless searches are recognized by the United States Supreme Court as exceptions to the warrant requirement of the Fourth Amendment. The 1982 amendment to Article I, Section 12, of the Florida Constitution, provides that rights guaranteed thereunder are to be construed in conformity with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court. The Legislature must be presumed to be aware of the 1982 amendment to the Florida Constitution.
The cited statutory restriction: "to make arrests without warrant for violation of any state law committed in their presence in accordance with the laws of this state; providing that no search shall be made unless it is incident to lawful arrest, to regulate and direct traffic concentrations and congestions," clearly relates only to arrests involving "the need to regulate and direct traffic concentrations and congestions." § 321.05(1), Fla. Stat. (1993) (emphasis added.) The Legislature is presumed to know the difference between a semi-colon and a comma. Because the underlined phrase is separated by a comma, rather than a semi-colon, it is presumed that the limitations to make searches only incident to a lawful arrest apply only to arrests relating to "traffic concentrations and congestion," and not all other forms of warrantless searches which highway patrol troopers are otherwise lawfully entitled to perform. Any other construction would put the underlined portions of section 321.05, Florida Statutes (1993), in conflict with the remaining language of 321.05, which expressly authorizes troopers to search for contraband, as well as other Florida statutes and case law relating to troopers' ability to conduct searches which are not incident to a lawful arrest. Adopting appellee's interpretation of the underlined portion of section 321.05 would defeat the spirit of the statute and cripple highway patrol troopers in routine searches for contraband, which are not incident to a lawful arrest. Such an interpretation would also place the statute at odds with Article I, Section 12, of the Florida Constitution.
Issues relating to the legality of the driver's consent should not have been presented to the trial court in the form of a motion to dismiss the complaint, but instead, should have been raised in the appellee's responsive pleading filed pursuant to rule 1.140, Florida Rules of Civil Procedure. The Florida Rules of Civil Procedure apply to forfeiture proceedings, as well as the Fourth Amendment Exclusionary Rule. In the case of In re Forfeiture of $62,200 in U.S., 531 So.2d 352 (Fla. 1st DCA 1988), the court noted that the Fourth Amendment exclusionary rule is applicable in forfeiture proceedings. Id. at 354 (citing One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); In re Forfeiture of a 1981 Ford Automobile, 432 So.2d 732 (Fla. 4th DCA 1983); and In re Forfeiture of 1972 Porsche, 307 So.2d 451 (Fla. 3d DCA 1975)). The court further stated:
We note that no Fourth Amendment violation was alleged in appellant's written answer, nor was a motion to suppress filed in the trial court. Instead, the evidence before the trial court was presented during the course of the forfeiture proceedings, rather than at a motion to suppress hearing. So far as the record before us shows, furthermore, the Fourth Amendment argument now urged before this court by appellant was squarely presented to the trial court for the first time on motion for rehearing. This no doubt accounts for the nature of the evidence upon which appellant now seeks to have this court superimpose a Fourth Amendment analysis. As the party having the burden of establishing error on appeal, appellant clearly assumed the risk that his efforts in the court to elevate a factual ambiguity to the level of a constitutional defense would be resolved against him.
In re Forfeiture of $62,200, 531 So.2d at 355.
If the appellee desired to present issues of the legality of the consensual search of the vehicle in question to the trial court, he should have raised those issues in his responsive *437 pleadings, and presented them for argument to the trial court in a motion to suppress unlawfully seized evidence. Therefore, the trial court's order granting appellee's motion to dismiss is hereby reversed and remanded with directions to grant the appellee thirty days to file a responsive pleading to the consent-search of the vehicle.
REVERSED AND REMANDED.
POLEN and STEVENSON, JJ., concur.