678 So.2d 388 (1996)
David MENDEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 95-0643.
District Court of Appeal of Florida, Fourth District.
July 10, 1996.
Emilio DeLaCal, Miami, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee; and Ettie Feistmann, Assistant *389 Attorney General, West Palm Beach, for appellee.
PARIENTE, Judge.
Defendant appeals the denial of his motion to suppress and accordingly his convictions for multiple offenses: trafficking in cocaine; unauthorized possession of a driver's license; possession of cannabis; driving under the influence; driving while license suspended; and resisting without violence. We affirm the trial court's order denying the motion to suppress because the police officer acted within the scope of his authority in requiring defendant to exit his vehicle, based on the facts and circumstances confronting the officer at the time.
The scenario leading to the discovery of contraband began innocently enough. At 6:44 a.m. Officer Julio Chang ("the officer") observed defendant in the driver's seat of a minivan stopped in the middle of three lanes of traffic on Sheridan Street in Hollywood. It appeared to the officer that the minivan had engine problems and that the driver was trying to get it started.
The officer pulled his police car alongside the minivan and rolled down his passenger side window to ask defendant if he needed a tow truck. Defendant responded that his girlfriend was on the way. The officer observed that defendant had bloodshot eyes and a flushed face which gave defendant the appearance of being intoxicated. Defendant, who was holding a cellular phone in his left hand, also appeared very nervous. The officer exited his vehicle and approached defendant.
The officer then saw defendant flick his right wrist to throw a small brown rubberbanded package directly behind him. Defendant's manner of throwing the package led the officer to believe that defendant didn't want him to see it. The officer testified that he was "really concerned" and "cautious" at that point, although not actually in fear for his life. The officer had defendant step out of his minivan and stand behind it. The officer testified that defendant exited his vehicle with a staggered appearance and unsteady gait.
After defendant was outside the vehicle, the officer reached inside the minivan and grabbed the package. The officer testified that he did this because of the manner in which defendant had thrown the package. The officer immediately opened the package and saw a plastic ziplock baggy containing a white powdery substance. The officer closed the package, put it in his rear pocket, and commenced a DUI investigation based on his prior observations of defendant's behavior. As a result of defendant's performance on the roadside sobriety exercises and the officer's observations, the officer placed defendant under arrest for DUI.
The officer then conducted an inventory search of the minivan and a search of defendant. No weapons were discovered. However, the officer found a glass vial on defendant's person and approximately sixteen grams of marijuana in a plastic baggy stuck underneath the cushion of a car seat.
The key to whether the officer acted in violation of the Fourth Amendment is whether the officer had the authority to order defendant out of his vehicle. This is because once defendant exited his vehicle, probable cause developed for a DUI arrest; any search of defendant's person or his vehicle would then have been justified as a search incident to his lawful arrest. See § 321.05 Fla. Stat. (1993); State Dep't of Highway Safety & Motor Vehicles v. Killen, 667 So.2d 433 (Fla. 4th DCA 1996).
The trial court found that the officer was authorized to ask defendant to step out of his car under either of two theories: (1) as a public safety officer conducting a traffic investigation in view of the fact that appellant was sitting in a clearly disabled vehicle in a traveled way; or (2) as part of a lawful investigatory stop, based on his belief that appellant was potentially DUI and was acting furtively. The trial court questioned whether the officer was authorized to reach into the vehicle and seize the package at the moment that he did so. The court concluded, however, that this issue was not critical because shortly thereafter the officer developed probable cause for a DUI arrest and could have then searched the vehicle anyway.
*390 Defendant relies on Popple v. State, 626 So.2d 185 (Fla.1993), in support of his contention that ordering him out of his vehicle was unlawful. In Popple, the defendant
was sitting in a legally parked car in a desolate area when a sheriff's deputy approached from the rear. After the deputy noticed Popple making furtive movements, he asked Popple to exit his vehicle. As Popple opened the door, the officer saw a cocaine pipe in plain view on the floorboard of the car.
Id. at 186.
The state conceded in Popple that the deputy did not have the well-founded suspicion necessary to authorize a temporary detention. Id. at 187. The state argued, however, that the deputy, approaching the defendant in a desolate area, was authorized to order the defendant to exit his vehicle based on justifiable concerns for his own safety. Id. The supreme court disagreed, finding that the deputy's request was in fact "a direction" for the defendant to exit his vehicle. Id. at 188. This direction "constituted a show of authority which restrained [the defendant's] freedom of movement because a reasonable person under the circumstances would believe that he should comply." Popple, 626 So.2d at 188. The supreme court held that this amounted to an investigatory stop requiring reasonable suspicion. Based on the state's concession, the supreme court concluded that "the initial detention was illegal and the resulting acquisition of the cocaine and drug paraphernalia was the fruit of an unconstitutional seizure." Id. Thus, the trial court had erred in denying the motion to suppress. Id.
There are significant differences between the facts of this case and Popple. Unlike the vehicle in Popple, the vehicle here was not legally parked. Also, the officer in this case had two valid bases of authority for ordering defendant out of his vehicle. Because his minivan was a disabled vehicle obstructing traffic, defendant could be legally detained for a traffic violation, and the officer was thus authorized to order defendant to exit the vehicle. See § 316.071, Fla. Stat. (1993); Stanley v. State, 559 So.2d 460, 461 (Fla. 4th DCA 1990); State v. Bernard, 650 So.2d 100, 102 (Fla. 2d DCA 1995). More importantly, it appeared that defendant, who was in control of the vehicle, was intoxicated and acting furtively. The officer was justified in ordering defendant out of the vehicle based on his well-founded suspicion that defendant was DUI. See § 316.003(10); State v. Mahoy, 575 So.2d 779 (Fla. 5th DCA 1991).
Once defendant exited the vehicle, it is undisputed that the officer observed additional indications of defendant's intoxicated state, thereby justifying administration of the field sobriety tests. Upon completion of these tests, the officer had developed probable cause to arrest defendant for DUI and search his vehicle incident to a lawful arrest.
We agree with the trial court's reservations about the officer's initial search of the brown package after defendant had been ordered to exit the vehicle but before the DUI test was administered. However, any impropriety in searching the minivan was vitiated because "evidence obtained as the result of unconstitutional police procedure may still be admissible provided the evidence would ultimately have been discovered by legal means." Maulden v. State, 617 So.2d 298, 301 (Fla.1993).
Defendant argues that the officer's original reason for ordering defendant out of his vehicle was pretextual. He asserts that the officer did not order defendant out of his vehicle because of the traffic violation or because of defendant's DUI status, but rather because the officer wanted to search the package he had seen thrown into the rear.
However, our supreme court, in State v. Daniel, 665 So.2d 1040 (Fla.1995), held that the stop of an automobile for a minor infraction such as the traffic violation here is lawful if the officer "would" have effected the stop absent any improper motive, even if a pretextual motive may have influenced the officer's decision. More recently, the United States Supreme Court in Whren v. United States, ___ U.S. ___, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), rejected the reasonable officer test in favor of an objective test; i.e., whether the officer "could" have stopped the vehicle for a traffic infraction.
*391 As we explained in Petrel, we are constitutionally directed to construe the Fourth Amendment consistent with United States Supreme Court rulings. Petrel v. State, 675 So.2d 1049 (Fla. 4th DCA 1996); see Art. I, § 12, Fla. Const.; Bernie v. State, 524 So.2d 988, 990-91 (Fla.1988). Under either Daniel's reasonable officer test or Whren's objective test, ordering defendant out of his vehicle in this case passes constitutional muster.
Thus the officer's reasons here for ordering defendant out of his vehicle are immaterial because the officer was authorized to do so without regard to any improper motive. We accordingly affirm the order of the trial court.
POLEN and KLEIN, JJ., concur.