876 So.2d 618 (2004)
Keith KOPPELMAN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-2506.
District Court of Appeal of Florida, Fourth District.
June 16, 2004.
*619 Carey Haughwout, Public Defender, and John M. Conway, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Monique E. L'Italien, Assistant Attorney General, West Palm Beach, for appellee.
POLEN, J.
This appeal arises from a final order finding Keith Koppelman guilty of possession of marijuana, possession of cocaine, and possession of paraphernalia. As discussed in detail below, we find that the trial court erred in denying Koppelman's motion to suppress. We therefore reverse the order of the trial court and instruct that on remand the trial court proceed in accordance with this opinion.
On May 16, 2002, around 8:30 p.m., Deputy William Luther was responding to a dispatch. En route to the dispatch location, Luther saw a black pick-up truck sitting stationary in an unpaved roadway with its lights on. It was a dirt road. There was no curb on either side of the road and there were no other cars. There were no "no parking" signs. Koppelman testified that his vehicle was parked half on the grass, half on the road. Luther testified that the vehicle was in the middle of the roadway. Luther frequently gets calls in reference to juvenile parties, noise disturbances and vandalism in the rural area where he saw the vehicle.
Luther approached the vehicle. Although Luther could not recall if his overhead lights were on, Koppelman testified, and the trial court specifically found, that they were. Koppelman filed a motion to suppress arguing that he was illegally seized. The trial court denied the motion and found that the stop was proper because Koppelman was illegally parked.
*620 Koppelman contends the trial court erred in denying his motion to suppress. We agree. "A trial judge's ruling on a motion to suppress is clothed with a presumption of correctness, and the ruling should not be disturbed on appeal absent an abuse of discretion." Lock v. State, 799 So.2d 384, 385 (Fla. 4th DCA 2001) (internal citations omitted). In addition, this court must accept the trial court's findings of fact, so long as those findings are supported by the record. Underwood v. State, 801 So.2d 200 (Fla. 4th DCA 2001).
The state first responds by pointing out that the issue was not properly preserved. Although Koppelman challenged the admissibility of his statements, the marijuana, the cocaine, and the paraphernalia in his motion to suppress, he did not object when the marijuana and the paraphernalia were entered into evidence at trial. As this court has previously noted, this failure to object resulted in the issue not being properly preserved for appellate review. See Roban v. State, 384 So.2d 683, 685 (Fla. 4th DCA 1980) ("Failure to renew an objection at trial contemporaneously with admission of the contested evidence constitutes a waiver of the right to appellate review of an alleged error."). However, a proper objection was made, and overruled, when the state entered the cocaine into evidence. As a result, the suppression of the marijuana and the paraphernalia is not properly before this court, but the suppression of the cocaine is.
The Florida Supreme Court explained that there are three levels of police-citizen encounters in Popple v. State, 626 So.2d 185 (Fla.1993).
The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.
Id. at 186.
In Popple, the court recognized there is no "litmus-paper test" for distinguishing a consensual encounter from a seizure. However, the court clarified that a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries. The person may not be detained without a well-founded and articulable suspicion of criminal activity. Id. at 187-88. A citizen encounter becomes an investigatory stop once an officer shows authority in a manner that restrains the defendant's freedom of movement such that a reasonable person would feel compelled to comply. Parsons v. State, 825 So.2d 406 (Fla. 2d DCA 2002).
Courts have routinely held that an officer's use of emergency lights "evidences an investigatory stop rather than a consensual encounter because the use of emergency lights leads the citizen to believe that he or she is no longer free to leave." Young v. State, 803 So.2d 880, 882 (Fla. 5th DCA 2002); see also Errickson v. State, 855 So.2d 700 (Fla. 4th DCA 2003); Siplin v. State, 795 So.2d 1010 (Fla. 2d DCA 2001); Hrezo v. State, 780 So.2d 194 (Fla. 2d DCA 2001); Brooks v. State, 745 So.2d 1113 (Fla. 1st DCA 1999).
In Popple, the court explained:
a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. *621 Mere suspicion is not enough to support a stop.
626 So.2d at 186 (citing § 901.151, Fla. Stat. (1991)); Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984).
In denying Koppelman's motion to suppress, the trial court relied on Mendez v. State, 678 So.2d 388 (Fla. 4th DCA 1996). In Mendez, the officer saw the defendant, at 6:44 in the morning, stopped in the middle of three lanes of traffic. It was clear to the officer that the vehicle the defendant was in had mechanical problems. The officer pulled alongside the defendant to inquire and noticed that the defendant appeared intoxicated. He also appeared very nervous. The officer exited his vehicle and approached the defendant when he saw the defendant make a furtive movement. The officer had the defendant step out of vehicle. He staggered upon exiting the vehicle. Id. at 389.
In Mendez, this court concluded that the defendant could be legally detained for a traffic violation "because his minivan was a disabled vehicle obstructing traffic." Id. at 390. As a result the officer was authorized to order him to exit the vehicle.
The case sub judice is readily distinguishable from Mendez. There was no traffic on the roadway when Deputy Luther approached Koppelman's vehicle. Further, Koppelman's vehicle was running and had the lights on. Thus, there was no indication that the vehicle was clearly disabled as was Mendez's vehicle.
In Underwood, this court reversed a trial court's denial of a motion to suppress. An officer approached the defendant's car stopped in the middle of a "very narrow" two-lane street. The deputy noticed the person in the vehicle talking to a pedestrian. There were no other vehicles on the roadway. The officer had to slow down, but not stop. As he approached the vehicle, the pedestrian walked away and the vehicle proceeded to drive forward. The officer turned his blue lights on and initiated a stop. The officer testified that his purpose for stopping the vehicle was to issue a ticket for obstructing the roadway, under section 316.2045(1), Florida Statutes. 801 So.2d at 201.
The trial court found the officer had probable cause to believe the defendant violated the obstruction of traffic statute. This court disagreed. Section 316.2045, "Obstruction of public streets, highways, and roads," provides the following:
It is unlawful for any person or persons willfully to obstruct the free, convenient and normal use of any public street, highway, or road by impeding, hindering, stifling, retarding, or restraining traffic or passage thereon, by standing or approaching motor vehicles thereon, or by endangering the safe movement of vehicles or pedestrians traveling thereon....
Id. This court opined that there was no willful obstruction of traffic as the statute required. As a result, there was no probable cause for the stop and the motion to suppress ought to have been granted.
Underwood is instructive. In the case at bar there was testimony from Deputy Luther that Koppelman's vehicle was parked in the roadway. Koppelman testified that the vehicle was parked on the side of the roadway, half on the grass. Both witnesses agreed that there were no curbs and the roadway was an unpaved road. When Luther was asked what his initial concern was upon seeing the vehicle he responded as follows:
My first concern was I didn't know, I I didn't know what to, what he was doing. I didn't know if it was juvenile, underage drinking. I didn't know if it was someone, illegal dumping, which is another concern we've had in that area. *622 I didn't know I didn't know what exactly the reason was for him sitting there.
The state attorney then asked "Okay. Was he legally parked? Was there a parking spot on that roadway?" Luther responded: "No. There was not." Luther later explained that he waited "at least thirty, forty-five seconds, maybe a minute," before he pulled up behind Koppelman's stationary vehicle. During cross-examination, defense counsel asked if Luther had taken any measurements to see how far Koppelman's vehicle was from the curb. Luther's response was that there was no curb, so he did not. Defense counsel also asked if Luther had any reason to believe Koppelman was committing a crime when he stopped Koppelman. Luther said he did not know. When pushed for a reason as to why he thought Koppelman was committing a crime, Luther explained that he has had similar incidences where juveniles had been inside vehicles doing illegal activity in that area.
In Underwood, the fact the vehicle was stopped in the roadway was not sufficient to warrant the stop. The case at bar is indistinguishable. Here, as Luther conceded, when he first saw Koppelman's vehicle he did not know why it was there. He further admitted that he thought it was suspicious based on his previous experience of other incidents in the area.
Interestingly, although not cited by either party, section 316.195, Florida Statutes, provides as follows: "Except as otherwise provided in this section, every vehicle stopped or parked upon a two-way roadway shall be so stopped or parked with the right-hand wheels parallel to and within 12 inches of the right-hand curb or edge of the roadway." § 316.195, Fla. Stat.
This statute, as well as Underwood, implies that stopping or parking along a two-way roadway is not illegal per se. Further, Luther conceded that he did not know how far Koppelman's vehicle was from the side of the road and both parties testified that there were no curbs. Although the trial court concluded that Koppelman was illegally parked, the court did not make any factual findings on where Koppelman's vehicle was in the roadway. This key fact was contested. Nor did the trial court, or the state, offer any authority for the conclusion that the vehicle was parked illegally.
Koppelman could not have been lawfully detained absent a well-founded and articulable suspicion of criminal activity. Luther's mere suspicion, based on previous incidents of unlawful activity, was insufficient to warrant the seizure. Popple, 626 So.2d at 186. The order denying the motion to suppress stated that the vehicle could have blocked traffic and could have created a danger to other vehicles. However, the record indicates it did not. Underwood teaches that the potential to block or interfere with traffic is insufficient to justify the stop. As a result, based on the totality of the circumstances, Underwood, and this record, we find that Luther did not have a well-founded and articulable suspicion of criminal activity. As a result, the trial court improperly denied the motion to suppress and we reverse the order of the trial court. As clarified above, on remand the suppression applies only to the cocaine, as the suppression of the other seized items was not properly before this court.
REVERSED and REMANDED.
KLEIN and GROSS, JJ., concur.