626 So.2d 185 (1993)
Tedd J. POPPLE, Petitioner,
v.
STATE of Florida, Respondent.
No. 80696.
Supreme Court of Florida.
October 14, 1993.
Richard L. Jorandby, Public Defender, and Ellen Morris and Paul E. Petillo, Asst. Public Defenders, West Palm Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., Douglas J. Glaid, Asst. Atty. Gen., West Palm Beach, and Michael J. Neimand, Asst. Atty. Gen., Miami, for respondent.
GRIMES, Justice.
We review Popple v. State, 609 So.2d 619 (Fla. 4th DCA 1992), because of its conflict *186 with Brown v. State, 577 So.2d 708 (Fla. 2d DCA 1991), and Jackson v. State, 579 So.2d 871 (Fla. 5th DCA 1991). We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
Tedd J. Popple was sitting in a legally parked car in a desolate area when a sheriff's deputy approached from the rear. After the deputy noticed Popple making furtive movements, he asked Popple to exit his vehicle. As Popple opened the door, the officer saw a cocaine pipe in plain view on the floorboard of the car. Popple was arrested, and the pipe and several rocks of cocaine were seized.
Popple was convicted of possession of cocaine and drug paraphernalia. On appeal, Popple argued that evidence of the contraband should have been suppressed because the officer did not have the requisite reasonable suspicion to direct him from his vehicle. In a split decision, the Fourth District Court of Appeal affirmed the convictions upon the premise that the officer's request that Popple step out of his car did not elevate the incident from a consensual encounter to an investigatory stop.
The testimony at the suppression hearing reflected that on June 1, 1991, at about 12:55 p.m. Tom Wilmoth, a uniformed deputy with the Indian River County Sheriff's Department, was investigating an abandoned stolen car located about one block from a high crime area. Deputy Wilmoth moved the abandoned car from the middle of the street to the side of the road and parked his patrol car in the shade to wait for a wrecker. While he was waiting, Wilmoth glanced in his rearview mirror and noticed Popple sitting in a car parked on the side of the road about four blocks away. Because the street was rather desolate, with no other cars and only a few residences, Wilmoth decided to inquire whether Popple knew anything about the stolen car or if he was experiencing car trouble. Wilmoth drove around the block, parked his patrol car behind Popple and approached his vehicle. Wilmoth testified that he must have "surprised him pretty bad" because he observed Popple acting in a nervous manner, reaching under the seat and "flipping" about in the car. To insure his safety, Wilmoth directed Popple to exit his vehicle. As Popple did so, Wilmoth saw a cocaine pipe in plain view on the floorboard of the car between the driver's seat and the driver's door. He arrested Popple and seized eight cocaine rocks discovered in the search incident to the arrest.
There are essentially three levels of police-citizen encounters. The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
The second level of police-citizen encounters involves an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. § 901.151 Fla. Stat. (1991). In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop. Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984).
While not involved in the instant case, the third level of police-citizen encounters involves an arrest which must be supported by probable cause that a crime has been or is being committed. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); § 901.15 Fla. Stat. (1991).
In affirming Popple's conviction, the court below reasoned:
We do not believe that a consensual encounter ceases to be an encounter and becomes a stop in every instance where an officer requests someone to step out of a car. A good example of this is the present case where the officer intended only to talk with the defendant. The circumstances *187 and the defendant's actions in this case created a situation where it was in the best interest of both the officer and the defendant that their conversations take place with the defendant out of the car. The potential threat perceived by the officer under these circumstances clearly outweighed any de minimis inconvenience imposed upon the defendant by the officer's request that he step out of his car. This request did not imply that the defendant was being detained or that he was not free to leave.
Popple, 609 So.2d at 620. The court admitted that its rationale differed from Brown and Jackson.
In Brown, police officers were conducting a drug search by randomly approaching people on the street who they thought were "possibly selling narcotics." Brown was sitting in his parked vehicle when an officer approached asking him to identify himself. Brown did not do so and was ordered to exit his car. As Brown opened his door, the officer observed three bags of marijuana in the car. The court stated:
First, we hold that this was a stop rather than a consensual encounter. Although Officer Cuicci needed no founded suspicion to approach and talk to Brown, once he directed Brown to exit the car, the encounter became a stop since Brown was no longer free to leave. See State v. Simons, 549 So.2d 785 (Fla. 2d DCA 1989).
577 So.2d at 709. Following Brown, the court in Jackson held that although the officer needed no founded suspicion to approach and talk to Jackson, once the officer directed Jackson to exit the car, the encounter became a stop requiring a founded suspicion.
The State concedes that Deputy Wilmoth did not have the well-founded suspicion necessary to authorize a temporary detention. The State seeks to justify the deputy's decision to order Popple out of the vehicle by first arguing that because Popple was parked in a desolate area Wilmoth acted reasonably in approaching Popple to check if he was experiencing car trouble or might know information about the abandoned vehicle. The State then maintains that under the doctrine of Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), Deputy Wilmoth could order Popple to exit his vehicle for his own safety once he had decided to talk with him.
It is well established that an officer does not need to have a founded suspicion to approach an individual to ask questions. Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Lightbourne v. State, 438 So.2d 380 (Fla. 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). We note, however, that in this case, Popple's car was parked four blocks away from the abandoned vehicle and Deputy Wilmoth was not really concerned that Popple's car might be disabled. Furthermore, we find the State's reliance on Mimms to be misplaced.
In Mimms, two police officers on a routine patrol noticed a man driving a vehicle with an expired license plate and lawfully stopped him to issue a traffic citation. The police officers asked Mimms to step out of the vehicle and produce his owner's card and operating license. When he exited the vehicle, the officers noticed a bulge under his sports jacket and frisked him, finding a gun. The United States Supreme Court held that the police did not violate Mimms' Fourth Amendment rights by asking him to exit his vehicle because he had already been legally detained. The Court reasoned that "the incremental intrusion resulting from the request to get out of the car once the vehicle was lawfully [detained for a traffic violation]" was minimal and the concern for police safety far outweighed the de minimis inconvenience on Mimms. 434 U.S. at 109, 98 S.Ct. at 332. Significantly, however, the Court stated that "we do not hold today that `whenever an officer has an occasion to speak with the driver of a vehicle, he may also order the driver out of the car.'" Id. at 111 n. 6, 98 S.Ct. at 333 n. 6.
Although there is no litmus-paper test for distinguishing a consensual encounter from a seizure, a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries, and the person may *188 not be detained without a well-founded and articulable suspicion of criminal activity. State v. Simons, 549 So.2d 785 (Fla. 2d DCA 1989). This Court has consistently held that a person is seized if, under the circumstances, a reasonable person would conclude that he or she is not free to end the encounter and depart. Jacobson v. State, 476 So.2d 1282 (Fla. 1985). Whether characterized as a request or an order, we conclude that Deputy Wilmoth's direction for Popple to exit his vehicle constituted a show of authority which restrained Popple's freedom of movement because a reasonable person under the circumstances would believe that he should comply.[1]See Dees v. State, 564 So.2d 1166 (Fla. 1st DCA 1990).
Therefore we hold that for Fourth Amendment purposes Popple did not consent to exiting his vehicle, but rather was seized by virtue of submitting to Deputy Wilmoth's show of authority. Because Deputy Wilmoth did not have the reasonable suspicion necessary to authorize an investigatory stop, the initial detention was illegal and the resulting acquisition of the cocaine and drug paraphernalia was the fruit of an unconstitutional seizure. The trial court erred in denying the motion to suppress. We approve the decisions of Brown and Jackson, quash the decision below, and remand with directions that the convictions be reversed.
It is so ordered.
BARKETT, C.J., and SHAW, KOGAN and HARDING, JJ., concur.
OVERTON, J., dissents with an opinion, in which McDONALD, J., concurs.
McDONALD, J., dissents with an opinion, in which OVERTON, J., concurs.
OVERTON, Justice, dissenting.
I find that the limited intrusion of asking Popple to step out of his car was reasonable. The request was made for the officer's safety as well as Popple's. Given the location and the other circumstances, I find it proper, particularly in view of the fact that Popple was parked in a desolate location near a high crime area and Popple made furtive movements as the officer approached. The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. The officer's direction was not unreasonable under these circumstances.
McDONALD, J., concurs.
McDONALD, Justice, dissenting.
I would affirm the decision under review. The reason evidence is suppressed is to deter the police from trespassing upon one's constitutional rights. In this case I see no unreasonable search or seizure and hence would hold that the evidence seized should be admitted.
OVERTON, J., concurs.
NOTES
[1] We can envision factual scenarios in which an officer who is put in fear of his or her safety would be justified in ordering a person out of a vehicle even in the absence of reasonable suspicion. However, to sustain the State's position in this case would mean that the police could order citizens out of their automobiles under almost any circumstances.