CASANUEVA, Judge.
Roger Riley, driving a friend’s car, was stopped by a police officer very early one morning, at approximately 3:00 a.m. Upon searching the vehicle the officer found a small amount of methamphetamine and drug paraphernalia. Mr. Riley moved to suppress the evidence, contending that the officer did not have founded suspicion to stop the car. We agree and reverse the denial of the motion to suppress.
The events leading to Mr. Riley’s arrest began when Officer Travis Hughes, on patrol in Auburndale, saw Mr. Riley’s car drive behind the Imperial Plaza shopping center. He followed in his patrol car, and when he arrived behind the center he saw Mr. Riley walking toward a trash dumpster. Mr. Riley looked right at the officer, turned around, returned to his car, and drove away at a normal speed. As Officer Hughes watched the car drive away, he could see the silhouettes of the driver and passenger and noticed that both of them were moving around a lot. His suspicions aroused, Officer Hughes turned on his blue lights and stopped the car.
At the hearing on the motion to suppress the drugs and paraphernalia, Officer Hughes testified about the Imperial Plaza location. Occasionally a car would be parked behind the plaza at that time of night as people went through the dumpsters, either to collect discarded items or to throw trash away. The officer also testified that some stores in the plaza had been burglarized, accomplished by backdoor entry, but he gave no information about how recently these crimes had occurred. Although the defendant was walking toward the dumpster, not toward a store, Officer Hughes’ concern was heightened by Mr. Riley’s immediate decision to turn around and leave rather than to proceed with dumpster-related business.
The totality of circumstances known to Officer Hughes, before he made the stop, did not give rise to a founded suspicion that Mr. Riley was committing, had committed, or was about to commit a crime. The officer, in fact, never articulated any specific suspicion about the defendant’s activities. Rather, given that Mr. Riley was first observed walking toward the dumpster, the only suspicion articulated about his behavior was noncriminal in nature-that he might be one of those persons who comb the dumpsters for valuables at night. He carried no burglary tools or flashlights; he was not walking stealthily or attempting to hide. Furthermore, the behavior of the driver and passenger once they left the area does not give rise to more than a mere hunch or the barest suspicion of criminal activity. In Popple v. State, 626 So.2d 185 (Fla.1993), a deputy asked Mr. Popple to get out of his car after he observed him making furtive movements in a legally parked vehicle. The Florida Supreme Court held, among other things, that those movements, in and of themselves, did not give the officer the well-founded suspicion to support a temporary detention.
In State v. Kibbee, 513 So.2d 256, 258 (Fla. 2d DCA 1987), our court delineated some of the factors that the court must evaluate to decide whether the stop of a person is within constitutional limits: “the time, the day of the week, the location, the suspect’s physical appearance, the suspect’s behavior, the appearance and manner of any vehicle involved, and anything incongruous or unusual in the situation as interpreted in the light of the officer’s knowledge.” Officer Hughes observed Mr. Riley behind a shopping center at 3:00 a.m. Although the time of day might arouse a bare suspicion of criminal activity, the officer could not point to any other factors that would justify his stopping the vehicle once Mr. Riley had left the area, especially because Popple suggests that the unusual *1113 movement of the occupants of the car would not give rise to reasonable suspicion. The officer articulated nothing else to suggest that Mr. Riley was involved in or about to become involved in criminal behavior. For these reasons, we reverse the order denying the motion to suppress.
Reversed and remanded with instructions to discharge the defendant.
PARKER, C.J., and GREEN, J., Concur.