855 So.2d 700 (2003)
Eric Charles ERRICKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-2754.
District Court of Appeal of Florida, Fourth District.
October 8, 2003.
*701 Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
POLEN, J.
This appeal arises from the entry of a final order adjudicating the appellant guilty of trafficking in hydrocodone, and sentencing him to 180 months incarceration. For the reasons explained in detail below, we find the trial court erred in denying the motion to suppress and reverse Errickson's conviction.
On August 18, 2001, Deputy Russell Tucker was working the midnight shift in St. Lucie County, Florida. Around 4:00 a.m. he noticed Eric Errickson sitting on the curb next to a bicycle and a pay phone in front of a closed Shell Gas Station. The Shell station had been burglarized numerous times. Tucker knew that most burglaries of convenience stores take place between 2 and 4 a.m. Tucker called 911 and told them he was stopping to investigate a suspicious person. Tucker put his overhead lights on, put his spotlight on, and approached Errickson. Tucker explained that the light helps him see if the person has any weapons and it also disorients the person so they cannot see Tucker exit the vehicle. Errickson made no attempt to leave.
When Tucker asked Errickson what he was doing, Errickson told him he was heading north on his bike from West Palm Beach and stopped for some water. The hose looked as if it had been turned on, the ground was wet. Errickson told Tucker he had no ID on him. Errickson told him his name, but spelled his last name differently than how it is actually spelled. Tucker then called to check if there were any outstanding warrants. He was advised that the name was listed as an alias and there was a possible warrant for a violation of probation in Palm Beach. At that time, Tucker put handcuffs on Errickson, told him there was a possible warrant, and put him in the back of the police car. When the warrant was confirmed, Errickson was arrested.
Deputy Waters arrived to assist Tucker. After placing Errickson under arrest, Waters conducted an inventory search of Errickson's property. She recovered a U.S. passport, Florida ID card, and a small prescription bottle with thirty-three hydrocodone pills.
*702 Errickson was charged by information with one count of giving a false name while arrested and one count of trafficking in hydrocodone. Errickson filed a motion to suppress alleging that the items taken were the result of an unlawful search and seizure. The trial court denied the motion finding that it was a consensual citizen encounter.
Errickson pled no contest to the charge of giving a false name and proceeded to trial on the trafficking charge. The jury found Errickson guilty of trafficking in hydrocodone as charged and he was sentenced to 180 months as the minimum mandatory sentence under section 893.135, Florida Statutes. This appeal timely follows. Errickson raises two issues on appeal. Because we agree with the first issue, we need not reach the second issue regarding the constitutionality of the sentencing statute.
Errickson initially contends the trial court erred in denying his motion to suppress. We agree. This court has clarified that "[a] reviewing court must accept the trial court's findings of fact in an order on a motion to suppress, so long as those findings are supported by the record; however, a suppression order that turns on an issue of law is reviewed by a de novo standard of review." Underwood v. State, 801 So.2d 200, 202 (Fla. 4th DCA 2001).
The Florida Supreme Court explained that there are three levels of police-citizen encounters in Popple v. State, 626 So.2d 185 (Fla.1993).
The first level is considered a consensual encounter and involves only minimal police contact. During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.
Id. at 186.
In Popple, the court recognized there is no litmus-paper test for distinguishing a consensual encounter from a seizure. However the court clarified that a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries, and the person may not be detained without a well-founded and articulable suspicion of criminal activity. Id. at 187-88. A citizen encounter becomes an investigatory stop once an officer shows authority in a manner that restrains the defendant's freedom of movement such that a reasonable person would feel compelled to comply. Parsons v. State, 825 So.2d 406 (Fla. 2d DCA 2002).
Courts have routinely held that an officer's use of emergency lights "evidences an investigatory stop rather than a consensual encounter because the use of emergency lights leads the citizen to believe that he or she is no longer free to leave." Young v. State, 803 So.2d 880, 882 (Fla. 5th DCA 2002); see also Siplin v. State, 795 So.2d 1010 (Fla. 2d DCA 2001); Hrezo v. State, 780 So.2d 194 (Fla. 2d DCA 2001); Brooks v. State, 745 So.2d 1113 (Fla. 1st DCA 1999).
The state argues that under the facts of this case the officer's use of overhead lights did not change the nature of the stop. The state points to Tucker's testimony that he put the lights on for his protection. Not only was this argument specifically rejected in Brooks, a closer reading of Tucker's testimony does not support this position. Tucker testified that he initially had his overhead lights on and then turned on his spotlight when he approached Errickson. Tucker testified that he stopped his vehicle with the overheads *703 on and turned his spotlight on because it helped his defense. More specifically that the spotlight helped him to see if Errickson had any weapons and to disorient him a little.
In addition, when asked by defense counsel whether Errickson was free to leave, Tucker responded as follows: "Basically he's not free to leave till I made contact with him and asked him what he was doing there and asked him for identity identifying him." In fact, when Tucker was asked if he was doing an investigation, he responded that he was as soon as he made contact with Errickson. Tucker also explained that after Errickson told him his name, Tucker "asked him to stay seated on the curb" while he checked for warrants.
The state contends that what started as a consensual encounter became a detention only at the point when Tucker asked Errickson to stay seated. However, the state suggests that at this time, the officer had the requisite suspicion to momentarily detain Errickson. We disagree. In Popple, the court also explained:
a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.
Popple, 626 So.2d at 186 (citing § 901.151, Fla. Stat. (1991); Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984)).
In Ippolito v. State, 789 So.2d 423 (Fla. 4th DCA 2001), this court addressed this issue in a similar context. In Ippolito, officers approached a car parked in front of a partially closed gas station. It was 3:00 am. The officers watched the car, noticed no illegal activity, but decided to investigate. When the officers asked the occupants what they were doing there, they told the officers they were using the payphone. The officers had not seen them use the phone over the past four or five minutes so did not believe them and asked them to step out of the vehicle. They subsequently discovered heroin in the vehicle. The trial court denied the motion to suppress, finding that there was reasonable suspicion for an investigatory stop based upon the hour, the officer's knowledge of previous burglaries at the station, and the officer's belief that appellant was untruthful about his reasons for being in the area. This court rejected that argument and reversed the ruling of the trial court, holding that "[a]lthough it was late at night and appellant was in an area of past criminal activity, these facts do not amount to a well-founded suspicion. Appellant was legally parked at the partially open gas station and he was not engaged in any observable unlawful activity." Id. at 425. The opinion also clarified that "the officer's belief that appellant lied about using the pay phone [did] not rise to the level of reasonable suspicion....[A]n officer's belief that an individual is lying does not, in and of itself, justify detaining him." Id. at 426.
Although the state claims Ippolito is distinguishable because the station was partially open[1], Ippolito is instructive. In this case, part of the officer's explanation for the stop was the hour, and his knowledge that the Shell station had been burglarized numerous times. These two justifications were specifically rejected in *704 Ippolito. In addition, Tucker acknowledged that Errickson told him he stopped for water and the ground under the hose was wet. There was no evidence of any criminal activity and Tucker's mere suspicion was insufficient under Popple to permit the stop.
Under these facts, and in accord with the above discussed case law, we hold that the trial court erred as a matter of law by concluding that this was a citizen encounter. As a result, the trial court erred in denying the motion to suppress and that order, as well as Errickson's conviction, are hereby reversed.
REVERSED.
WARNER and STEVENSON, JJ., concur.
NOTES
[1] In Ippolito, the station was closed, but the gas pumps were lit and open for use by customers using credit cards.