979 So.2d 391 (2008)
C.B., Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-1112.
District Court of Appeal of Florida, Second District.
April 18, 2008.
*392 James Marion Moorman, Public Defender, and Paul C. Helm, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Dale E. Tarpley, Assistant Attorney General, Tampa, for Appellee.
GALLEN, THOMAS M., Associate Senior Judge.
C.B. appeals the order finding that she committed battery on a law enforcement officer under section 784.07(2), Florida Statutes (2006), withholding adjudication, and placing her on probation. We reverse and remand with instructions to the trial court to enter a corrected order placing C.B. on probation for the lesser included offense of battery under section 784.03(1).
The State filed an amended delinquency petition alleging one count of battery on a law enforcement officer, one count of resisting with violence, and one count of resisting without violence. The trial court conducted a bench trial on the petition after which it granted C.B.'s motion for judgment of acquittal regarding counts two and three but denied the motion with regard to battery on a law enforcement officer. We review the denial of a motion for judgment of acquittal de novo. Pagan v. State, 830 So.2d 792, 803 (Fla. 2002). There are no facts in dispute.
On January 16, 2007, Jane Luckett called police and advised them that her daughter C.B. had failed to appear at a scheduled Marchman Act hearing. Ch. 397, Fla. Stat. (2006). Part V of the Act provides that parents can petition for involuntary treatment for their minor children who are determined by the trial court to be substance abusers. Luckett asked that her daughter be picked up pursuant to an ex parte order which she believed the trial court had issued. Officer Quigley was dispatched and drove his patrol car to Luckett's residence, arriving, apparently coincidentally, when C.B. was approaching the residence on foot. He made no attempt prior to approaching C.B. to verify Luckett's information that the trial court had issued an ex parte pick-up order.
Officer Quigley testified that he arrived in a marked police cruiser and that he was wearing his uniform. He approached C.B., told her why he was there, and "attempted to detain her temporarily to investigate." C.B. refused to stop or cooperate with *393 Quigley, resulting in Quigley's attempt to "physically detain" her, and he "attempted to escort her peacefully back to my vehicle. . . . It uh, escalated to the point where I needed to basically use a physical restraint maneuver to gain control over her." Quigley called for backup and Officer Robinson responded to his call. Robinson was able to handcuff C.B. and both officers escorted her to Robinson's vehicle. C.B. actively resisted throughout the process and the officers used significant measures, including leg restraints, to subdue her. While the officers were attempting to affix a seat belt to prevent C.B. from leaning forward, she spit on Officer Robinson several times. The spitting resulted in the conviction which is the subject of this appeal. Neither officer indicated they ever had an intention to arrest C.B. nor did they communicate to her that she was under arrest, although Officer Robinson stated that "I transported her to the police department, decided to take her away from there. . . . [W]e just decided to take her to the station and put her in a holding cell."
Section 784.07(2) provides an enhancement to the offense of battery under section 784.03(1), Florida Statutes (2006), by elevating the offense to a third-degree felony. Further, section 776.051(1) provides that a "person is not justified in the use of force to resist an arrest by a law enforcement officer who is known, or reasonably appears, to be a law enforcement officer." Conversely, subsection (2) provides that a "law enforcement officer, or any person whom the officer has summoned or directed to assist him or her, is not justified in the use of force if the arrest is unlawful." In Tillman v. State, 934 So.2d 1263, 1270 (Fla.2006), the court held:
Because the prohibition in section 776.051(1) applies only to the use of force to resist arrest, the provision has no application against law enforcement officers under other circumstances. The Legislature has not expressly precluded the defense of justifiable use of force against an officer in situations other than arrest. For this reason, and because the Legislature has placed the element of lawful execution of a legal duty in both sections 784.07(2) and 843.01, proof that the officer was acting lawfully is necessary in a prosecution for crimes committed under either statute that occur outside an arrest scenario.
Citing Tillman, this court, in J.H.M. v. State, 945 So.2d 642, 645 (Fla. 2d DCA 2006), provided the following guidance:
We are inclined to believe that the supreme court in Tillman may have intended to use the more formal and technical definition of "arrest" that is used for purposes such as speedy trial. As Justice Bell explained in his concurring opinion in Bulgin v. State, 912 So.2d 307 (Fla.2005):
It is uniformly held that an arrest, in the technical and restricted sense of the criminal law, is "the apprehension or taking into custody of an alleged offender, in order that he may be brought into the proper court to answer for a crime." Cornelius, Search and Seizures, 2nd ed., Sec. 47. When used in this sense, an arrest involves the following elements: (1) A purpose or intention to effect an arrest under a real or pretended authority; (2) an actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer *394 then and there to arrest and detain him.
The State argues that Officer Quigley was justified in making an investigatory stop, and was therefore in the lawful execution of his duty when C.B. resisted, for which the State says she was arrested, and then committed the battery on Officer Robinson who was in the lawful performance of his duty by backing up Officer Quigley. The facts in the record show C.B. was never arrested.
The criteria for making an investigatory stop are set forth in Popple v. State, 626 So.2d 185, 186 (Fla.1993):
The second level of police-citizen encounters involves an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968). At this level, a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. § 901.151 Fla. Stat. (1991). In order not to violate a citizen's Fourth Amendment rights, an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop.
The State argues that Officer Quigley had a well-founded, articulable suspicion that C.B. had committed the "crime" of "not showing up" for a hearing under chapter 397, a civil proceeding. There is nothing in the statute to support the contention that failing to appear in a civil proceeding is a crime. If the court had actually issued an ex parte pick-up order, as reported by C.B.'s mother, then Quigley may have been justified in arresting her on the basis of that order. However, Quigley, by his own testimony, made no effort, prior to making contact with C.B., to verify through police sources that such an order had actually been issued, and he stated that afterwards he was not able to confirm the issuance of such an order. Further, under the facts here there were no exigent circumstances compelling an immediate apprehension of C.B. Officer Quigley could have taken sufficient time to confirm the existence of a pick-up order before making any contact with C.B. As it turned out, there was no pick-up order and hence no justification for arresting C.B.
In Tillman, 934 So.2d at 1273, the court concluded that "[t]he detention of Tillman constituted lawful execution of a legal duty only if the facts known to the officer created a reasonable suspicion either that Tillman was involved in criminal activity or that he was armed and dangerous." Here, there is no contention that Officer Quigley had a reasonable suspicion that C.B. was engaged in criminal activity or that she was armed and dangerous. The State has provided no support for its contention that failing to appear in a civil proceeding is a crime and we know of none. Moreover, the only evidence Quigley had concerning the existence of a pick-up order was the unverified information provided by Ms. Luckett, which in fact proved untrue. We conclude that Officer Quigley had no "well-founded, articulable suspicion of criminal activity" on the part of C.B., but had only a "mere suspicion" that a pick-up order had been issued. Popple, 626 So.2d at 186. Consequently, he was not lawfully justified in making an investigatory stop of C.B. or detaining her.
Thus, when Quigley physically restrained C.B. he was not in the lawful performance of his duties, and the decision in this case is governed by Tillman and this court's decision in J.H.M. Under those cases, if an officer is not engaged in the lawful performance of a legal duty when the defendant's use of force occurs, the proper analysis of the judgment of acquittal depends upon whether the use of force *395 occurred either (a) before the defendant was placed under arrest, or (b) during or after an actual arrest. See Tillman, 934 So.2d at 1269-71; J.H.M., 945 So.2d at 644-46. Because the record shows there was no lawful justification to detain C.B. until after she spit on Officer Robinson, the officers were not engaged in the exercise of their lawful duties when the battery occurred. Further, as in J.H.M., it is unlikely that this case ever became an arrest case because there is no evidence in the record that either officer ever communicated to C.B. that she was under arrest.
Reversed and remanded to the trial court with instructions to enter a corrected order placing C.B. on probation for battery under section 784.03(1).
STRINGER and SILBERMAN, JJ., Concur.