987 So.2d 1281 (2008)
Cedric L. RACHEL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-4378.
District Court of Appeal of Florida, Fourth District.
August 20, 2008.
*1282 Carey Haughwout, Public Defender, and Peggy Natale, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
POLEN, J.
Appellant, Cedric L. Rachel, pled no contest to charges of possession of cocaine, oxycodone pills and marijuana, reserving the right to appeal the trial court's denial of his motion to suppress the evidence. On appeal, Rachel argues the motion to suppress should have been granted, as the evidence was obtained subsequent to an illegal seizure that was not supported by the well-founded suspicion necessary to justify a detention. We find merit in Rachel's argument and reverse.
On the evening of November 21, 2006, Detectives Burrows and Coker patrolled the outer area of a strip club, which was open for business. Although the detectives frequently patrolled the area, they were not asked by the management of the establishment to be present. The parking lot adjoining the establishment had a high incidence of narcotic-related activity. They observed Rachel's vehicle pull into *1283 the well-lit parking lot of the club. Although several parking spots were open, the car stopped in a lane in the lot. After observing the defendant's vehicle for a few minutes, the officers decided to make contact and approached the vehicle on foot to investigate why the driver left the vehicle in the aisle instead of pulling into a spot.
As the officers approached, Rachel exited the vehicle, locked the doors, and began walking towards the club. The detectives then stopped Rachel and physically pulled him back to the back of the vehicle. While Detective Coker spoke to Rachel, Detective Burrows proceeded to look through the front windows of Rachel's vehicle with a flashlight and saw what appeared to be one rock of crack cocaine on the floorboard. After the detective retrieved the cocaine, Rachel was placed under arrest, and a search of his car and person revealed oxycodone pills and a bag of marijuana.
The Florida Supreme Court has observed that there are three levels of police-citizen encounters for the purpose of Fourth Amendment analysis. Popple v. State, 626 So.2d 185, 186 (Fla.1993). A consensual encounter between a police officer and a citizen is the first level of police-citizen encounters and occurs when there is only minimal police contact. Id. The second level of police-citizen encounters involves an investigatory stop where a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); see also § 901.151(2), Fla. Stat. (2006). A citizen encounter becomes an investigatory stop once an officer shows authority in a manner that restrains the defendant's freedom of movement such that a reasonable person would feel compelled to comply. Errickson v. State, 855 So.2d 700, 702 (Fla. 4th DCA 2003). The third level of police-citizen encounters involves an arrest which must be supported by probable cause that a crime has been or is being committed. See Popple, 626 So.2d at 186; see also § 901.15, Fla. Stat. (2006).
Appellate courts should review mixed questions of law and fact that ultimately determine constitutional rights by using a two-step approach, deferring to the trial court on questions of historical fact but conducting a de novo review of the constitutional issue. Connor v. State, 803 So.2d 598, 605 (Fla.2001).
In the instant case, the consensual encounter escalated to an investigatory stop when the detectives pulled Rachel back to the vehicle. However, the detectives lacked the well-founded suspicion of criminal activity necessary to justify the detention, and therefore the evidence found subsequent to the detention should have been suppressed. G.A.M. v. State, 780 So.2d 288, 290 (Fla. 4th DCA 2001) (citing Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). The detectives did not witness a crime occur, and the positioning of Rachel's vehicle did not block traffic. Further, the drugs were found almost immediately after the illegal detention. Therefore, there was no break in the chain of illegality sufficient to dissipate the taint. Williams v. State, 769 So.2d 404, 406 (Fla. 2d DCA 2000).
We reverse the denial of the motion to suppress.
FARMER and HAZOURI, JJ., concur.