RAMIREZ, C.J.
 

 Aaron Hill appeals his judgment of conviction and sentence. Hill argues that the trial court erred in denying his Motion to Suppress Evidence. We agree because the police conducted an investigatory stop without reasonable suspicion of criminal activity, and thus Hill’s consent to a search was involuntary.
 

 In the early morning of May 31, 2008, Officer Brian Leahy of the Key West Police Department responded to an anonymous call that a black male wearing a shirt, jeans, and nice sneakers was sitting with a nicely dressed white female and selling narcotics. Officer Leahy arrived at the location and exited his vehicle, finding a male and female who generally fit the anonymous caller’s description. At this point, Officer Leahy did not observe anything that indicated that a crime had occurred, was occurring, or was about to occur. He called Officer Tommy Anglin to the scene for assistance. Officer Anglin arrived in his patrol car, entering the wrong way on the one way street where the two individuals sat, and then directed his spotlight on the two figures. Shortly thereafter, two other uniformed officers arrived at the scene.
 

 Officer Anglin asked Hill for his identification. From only a few feet away, Officer Anglin called from his phone to run a warrants check. While Officer Anglin retained Hill’s identification, Officer Leahy asked Hill for his consent to a search. No weapons were displayed in Hill’s presence, and Hill had not been ordered to sit down or remain in a particular place. Officer Leahy testified that Hill was free to decline the search and leave. Although Hill felt that the officer did not have a right to
 
 *439
 
 search him, Hill proceeded to empty his pockets. As Hill removed his keys from one of his pockets, Officer Leahy noticed a clear plastic bag with a white powdery substance inside. Recognizing the substance to be cocaine, Officer Leahy placed Hill under arrest. A field test yielded positive for cocaine.
 

 On June 26, 2008, the State filed an information charging Hill with possession of cocaine. Hill entered a plea of nolo contendere.
 

 On January 22, 2009, Hill filed a motion to suppress the cocaine evidence on the ground that the police illegally stopped and searched him without a reasonable suspicion of criminal activity. At the hearing held on the motion to suppress, defense counsel asserted that the totality of the circumstances — Hill was “boxed” in by four uniformed officers who approached from multiple directions; Officer Anglin drove his patrol car against traffic, stopped it directly in front of Hill, and directed a spotlight on him; Officer Anglin retained Hill’s identification; and Officer Leahy asked for Hill’s consent to a search— amounted to a Fourth Amendment stop from which no reasonable person would have felt free to leave. The State maintained that the encounter was consensual, and that Hill’s act of emptying his pockets was not an acquiescence to police authority, but rather was free and voluntary.
 

 On February 9, 2009, the trial court entered an order denying Hill’s motion, holding that the proximity of the patrol cars and the presence of four officers, without more, was not an overwhelming show of force. Additionally, the court found that the officers did not attempt to physically block or touch Hill, did not show their weapons, did not use a commanding tone of voice or language, and did not otherwise attempt to limit Hill’s capacity to simply refuse to empty his pockets and walk away. Therefore, the encounter was consensual and did not amount to a “search or seizure.” The court ultimately adjudicated Hill guilty, and sentenced Hill to two years of probation.
 

 There are “essentially three levels of police-citizen encounters.”
 
 Popple v. State,
 
 626 So.2d 185, 186 (Fla.1993). The first and least intrusive level is a consensual encounter, which involves “only minimal police contact” during which a citizen is free either to comply with the officer’s requests or to ignore them.
 
 Id.
 
 Because the citizen is free to leave, constitutional protections do not apply.
 
 Id.
 
 The next level is an investigatory stop or detention pursuant to
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), during which an officer may reasonably detain a person only if he or she has a well-founded, articulable suspicion that the individual is engaged in criminal activity.
 
 See
 
 § 901.151, Fla. Stat. (2006).
 
 See also Carroll v. State,
 
 636 So.2d 1316, 1318 (Fla. 1994);
 
 Popple,
 
 626 So.2d at 186. “Mere suspicion is not enough to support a stop.”
 
 Popple,
 
 626 So.2d at 186.
 

 Although there is no “litmus-paper test” for distinguishing a consensual encounter from an investigatory' stop or detention, decades of precedent have yielded rough categories of police conduct which will usually trigger Fourth Amendment concerns.
 
 See Golphin v. State,
 
 945 So.2d 1174 (Fla.2006). The Supreme Court adheres to the view that a person is “seized” only when, “by means of physical force or a show of authority, his freedom of movement is restrained.”
 
 U.S. v. Mendenhall,
 
 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). As long as the person remains free to disregard the officer’s questions and walk away, “there has been no intrusion upon that person’s liberty, or privacy.”
 
 Id.
 
 at 554. In other words, a person is “seized” within the meaning of the Fourth Amendment “only if, in view of all the circumstances sur
 
 *440
 
 rounding the incident, a reasonable person would have believed that he was not free to leave,” even if the person did not attempt to leave.
 
 Id.
 

 We cannot say that a reasonable person in Hill’s position would have felt free to leave or to decline the officers’ requests in light of the surrounding circumstances immediately preceding Hill’s arrest. Unlike in
 
 Golphin,
 
 where the defendant had been approached by the officers in casual conversation and where the defendant was found to have freely, consensually, and voluntarily produced his identification, Hill was approached by four officers in the dark in a manner that indicated an investigatory stop was taking place.
 
 Golphin.,
 
 945 So.2d at 1188. Specifically, one officer drove his patrol car the wrong way on a one-way street and positioned the car directly in front of Hill, pointing the car’s spotlight on Hill and the woman he was with. Another officer approached Hill on foot from the opposite direction in a manner that indicated a sense of urgency.
 
 See State v. Dixon,
 
 976 So.2d 1206, 1209 (Fla. 4th DCA 2008) (no consensual encounter was found where the detectives approached Dixon from opposite directions, and then stood directly in front of him prior to engaging in a search of his person that was ultimately held to be involuntary). Almost immediately thereafter, two additional uniformed officers joined at the scene. This method of approach and show of authority are certainly akin to the “threatening presence of several officers” that the Supreme Court in
 
 Mendenhall
 
 stated might indicate a Fourth Amendment “seizure.”
 
 Mendenhall,
 
 446 U.S. at 554, 100 S.Ct. 1870.
 

 Additionally, the officers asked Hill for his consent to a search while one officer retained his license to run a warrants check. The Florida Supreme Court has found that “the retention of identification during the course of further interrogation or search certainly factors into whether a seizure has occurred.”
 
 Golphin,
 
 945 So.2d at 1185. Accordingly, a reasonable person in Hill’s shoes would not have felt free to simply walk away from four officers, one of whom retained Hill’s license while another asked to search Hill’s person.
 

 Lastly, the officers in this case did not have a well-founded, articulable suspicion that Hill was engaging in criminal activity, as is necessary to support a Fourth Amendment investigatory stop. Officer Leahy testified as much, agreeing that he did not see anything that gave him probable cause to believe that a crime had occurred, was occurring, or was about to occur. Because the officers’ contact with Hill amounted to a Fourth Amendment investigatory stop, and because the police did not have a well-founded, articulable suspicion that Hill was engaging in criminal activity, Hill’s consent to a search was tainted such that it was not voluntary.
 

 Therefore, we reverse the order denying Hill’s motion to suppress, and remand the cause with directions consistent with this opinion.
 

 Reversed and remanded.