CLARK, J.
Appellant appeals his conviction and sentence on grounds that the trial court erroneously denied his motion to suppress evidence found on his person pursuant to a detention without sufficient cause to suspect any illegal activity. Because the undisputed facts of Appellant’s initial encounter with the police were insufficient to support a reasonable suspicion that Appellant was committing trespass, the denial of the motion to suppress is reversed.
The consistent testimony of the three police officers at the suppression hearing established that four officers in plain clothes were patrolling in an unmarked vehicle in the neighborhood on the day of the incident. The officers were not responding to a call, any particular complaint, or tip, but were “just riding around.” They observed three men standing in the front yard, near the front porch and driveway, of a townhome. The front *1284 window of the townhome displayed a prominent “No Trespassing” sign which the officers observed. The officers stopped their vehicle and all four exited the vehicle (“jumped out,” according to counsel and agreed to by one of the officers) at approximately the same time, in order to make contact with the men and determine if they were trespassing. Before the officers asked any questions, one of the men fled over a fence to a neighboring property and another of the men retreated inside the townhome. Two of the police officers immediately chased the fleeing man and engaged in a physical altercation with him. Appellant was the only one of the group who remained where he was upon seeing the officers emerge from their vehicle. The two officers who approached him testified consistently that Appellant posed no threat and did not make any suspicious movements. There was no evidence that any of the officers recognized any of the men as previous trespassers.
At this point in the encounter, one of the officers inquired of Appellant whether he lived on the premises, to which Appellant responded “my people do” or something similar. Appellant then informed the officer that his own address was several streets away. The officer then directed Appellant to accompany him to the unmarked vehicle to verify Appellant’s identity. Meanwhile, as the other officers continued to struggle with Appellant’s companion who had fled next door, a weapon was found on the companion’s person. Observing this, Officer Gillespie handcuffed Appellant for officer safety. As he was handcuffing Appellant, he visually observed the evidence in question on Appellant’s person.
Contrary to the State’s position in response to the motion to suppress, Appellant’s initial encounter with the police officers was not a consensual encounter requiring no reasonable suspicion that Appellant was trespassing. “When determining whether a particular encounter is consensual, the Court must look to the ‘totality of the circumstances’ surrounding the encounter to decide ‘if the police conduct would have communicated to a reasonable person that the person was free to leave or terminate the encounter.’ ” Collins v. State, 115 So.3d 1040, 1042 (Fla. 4th DCA 2013) (quoting Taylor v. State, 855 So.2d 1, 15 (Fla.2003)). The officers’ description of their sudden, collective exit from their vehicle and immediate pursuit of the fleeing man does not describe a casual encounter where officers merely approach an individual and initiate a conversation.
An example of a consensual encounter is described in Voorhees v. State, 699 So.2d 602 (Fla.1997), where officers approached a man during cold and rainy weather and the man told the officers he was lost. The officers offered the man shelter, clean clothing, and a hot meal, and the man voluntarily entered the patrol vehicle and handed the officers a knife. Similarly, in Ward v. State, 21 So.3d 896 (Fla. 5th DCA 2009), police officers were patrolling on foot in a multi-building apartment complex liberally marked with “no trespassing” signs. The officers approached Mr. Ward, who was also walking in the parking lot of the premises, and inquired whether Ward was a resident. Ward voluntarily responded that he was not a resident and was “just cutting through.” These consensual encounters are distinguishable from the show of force in this case, where the officers suddenly parked, emerged from them vehicle, and pursued and subdued Appellant’s companion before asking any questions.
The initial encounter here is more similar to that described in Leroy v. State, 982 So.2d 1250 (Fla. 1st DCA 2008), *1285 where the officer shined a spotlight on the defendant’s vehicle and approached the defendant in a confined space between two vehicles. In Leroy, as under the circumstances in this case, the immediate show of force by the officers would not communicate to a reasonable person that he or she was free to leave or otherwise end the encounter. Rather than fleeing and being pursued and physically subdued like his companion, Appellant stayed in place and responded to the officer’s inquiry of whether Appellant lived there.
Because a reasonable person would not feel free to leave in Appellant’s situation, Appellant’s initial encounter with the officers constituted the second level of police-citizen encounter, an investigatory stop or temporary detention.[1] As such, the officers in this case needed “a reasonable suspicion that a person has committed, is committing, or is about to commit a crime.” Popple v. State, 626 So.2d 185, 186 (Fla.1993). The elements of trespass on property are set out in section 810.09(1), Florida Statutes. The element of lack of authorization, invitation, etc. may not be presumed upon a person’s mere presence on the property because “mere presence on a property is not sufficient to give rise to a reasonable suspicion that the crime of trespass is being committed and cannot be the basis for an investigatory stop.” Collins v. State, 115 So.3d at 1043. The fact that the property is posted with “no trespassing” signs does not make one’s mere presence sufficient. Leroy, 982 So.2d 1250.
Appellant’s initial encounter with the police was not a consensual encounter, but was an investigatory stop, requiring a reasonable suspicion that Appellant had committed, was committing, or was about to commit a crime. Because the officers lacked reasonable suspicion that Appellant was trespassing at the time they first observed his presence on the property, the investigatory stop of Appellant did not comport with the Fourth Amendment. Accordingly, the eventual evidentiary product of this initial encounter should have been suppressed. The trial court’s denial of the motion to suppress is REVERSED and the judgment and sentence based on the plea entered after denial of the motion to suppress are likewise REVERSED.
WETHERELL and RAY, JJ., concur.

. The Florida Supreme Court described the three levels of police encounters in Popple v. State, 626 So.2d 185, 186 (Fla.1993).