EDWARDS, J.
A.P. (“Appellant”) appeals the order denying his motion to suppress evidence, specifically the baggie of marijuana that he pulled from his pocket and gave to Officer Ogletree who had stopped and detained Appellant. After his motion to suppress was denied, Appellant pled no contest to possession of less than twenty grams of marijuana and possession of drug paraphernalia. Appellant reserved his right to appeal the adverse ruling. Because we' find that he was- stopped by the police without reasonable suspicion that he was involved in the commission of a crime, the stop was invalid and all evidence obtained as a result of the stop should have been suppressed. Accordingly, we reverse and remand; ■
“We are governed by the standard that ‘mixed questions of law and fact that ultimately determine constitutional rights should be reviewed ... using a two-step approach, deferring to the trial court on questions of historical fact but conducting a de novo review of the constitutional issue.’ ” Luna-Martinez v. State, 984 So.2d 592, 597 (Fla. 2d DCA 2008) (alteration in original) (quoting Connor v. State, 803 So.2d 598, 605 (Fla.2001)).
In this case, the police received an anonymous tip by phone that advised of a black male with dreadlocks whom the caller said was possibly dealing drugs that night in front of a specific residence. This tip was truly anonymous as the caller did not provide a name, phone number, or any other type of identification. Officer Ogletree was dispatched- to investigate the tip. Upon reaching the residence, he saw Appellant- and a Hispanic male sitting in a silver Ford Taurus in the driveway. The record does not suggest that Appellant had dreadlocks, but it was also not negated. Appellant was the front seat passenger. Rather than stopping his marked car at the residence, Ogletree drove around the corner, exited his vehicle, and walked to where he could see the Taurus in the driveway. As a. fourteen-year veteran on the force, he did not think any drug deals would take place if his cruiser was in plain view. Oglétree then called for narcotics backup.
While out of his car, Ogletree saw a white car drive down the road arid stop in front of the residence. The white car was facing Ogletree’s direction with its high beam lights on. Just as the white car pulled up, Ogletree heard an alarm go off, about five or six houses down the street, *917 which made him suspect that a burglary might be in progress. Ogletree began to approach the Taurus on foot. As he did so the white car drove off. Ogletree did nothing to stop the vehicle or to get its tag number, even though he thought the white car may have been involved in a possible burglary in progress.
As Ogletree neared the residence, the Taurus began to back out of the driveway and drove down the street. Ogletree “hit” the car with his flashlight (shined his light inside it) and said “police,” with the intent of telling the occupants of the Taurus to stop. The occupants complied and Ogle-tree asked them about the burglar alarm. The driver explained that the alarm had gone off earlier, and the homeowner said she was having trouble with the alarm.
Ogletree asked both Appellant and the Hispanic male for identification, but neither provided any at that time. The driver, however, gave Ogletree the ear’s registration, which Ogletree told them he was going to keep while he investigated the alarm. He told them to “stay put.” As he shined his flashlight in the, car and spoke with its occupants, Ogletree observed a marijuana stem on the console between Appellant and the driver. Ogletree left the car and spoke with the homeowner who confirmed that it was a false alarm.
Before Ogletree returned to the Taurus, four more officers and one K9 unit arrived at the scene. The dog was led around tlie car and alerted to the trunk, indicating the possible presence of contraband. By the time Ogletree returned to the Taurus, its occupants were already outside; however, he did not know why they had gotten out of the car.
Ogletree then took Appellant across the street and asked him if he could search him. Appellant immediately reached in his pocket and pulled out a small baggie with green, leafy matérial -in it and gave the baggie to Ogletree. Appellant answered “yes” when Ogletree asked if it was grass or weed. Ogletree testified that “it was just the two of us and it was voluntary all the way.” Ogletree then checked;Appellant’s background,-, found he had no criminal record and wrote him a civil juvenile citation for possession of less than twenty grams of cannabis.
Ogletree testified that by shining his flashlight at them and saying “police,” he expected Appellant and his companion to stop. Furthermore, he agreed that once he took the vehicle registration and told them-to -stay there until ¡he returned, they were not free to go. “A citizen encounter becomes an investigatory stop once an officer'shows authority in a manner that restrains the defendant’s freedom of movement such that a reasonable person would feel compelled to comply.” Parsons v. State, 825 So.2d 406, 408 (Fla. 2d DCA 2002) (citing Popple v. State, 626 So.2d 185, 186 (Fla.1993)). Ogletree’s detention of Appellant was an investigatory stop, which is justified only when the officer has a well-founded suspicion that the person has committed, is committing, or is about to commit, a crime. See Popple, 626 So.2d at 186.
 The trial judge concluded. that there was a reasonable basis for this investigatory stop; we disagree. Á truly anonymous tip with no identification of the tipster and few details of the suspected criminal activity, falls on the very low end of the reliability scale in terms of providing' justification for a stop. Baptiste v. State, 995 So.2d 285, 291 (Fla.2008). When following an anonymous tip, law enforcement must develop detailed, specific information corroborating the tip. Pinkney v. State, 666 So.2d 590, 592 (Fla. 4th DCA 1996). Prior to stopping the Taurus and its occupants, Ogletree did not observe anything to corroborate the tip. In fact, he observed two men in a parked car, and this observation did not match the tip. *918 Ogletree admitted that he did not find the occupants of the Taurus to be engaged in anything criminal or suspicious. Furthermore, the fact that a burglar alarm went off several houses away while Ogletree was observing the Taurus did not provide any reasonable suspicion that Appellant had-been or was engaged in any criminal activity. Thus, the stop was not justified and all evidence obtained thereafter should have been suppressed.
The trial judge also- based his denial of the motion to suppress by finding that there was a voluntary turnover rather than a search, when Appellant handed the baggie of marijuana to Ogletree. “When the initial police activity is illegal, the State must establish by ‘clear and convincing evidence’ that there has been an unequivocal break in the chain of illegality sufficient to dissipate the taint of the prior illegal police action and thus render the consent freely and voluntarily given.’ ” Jordan v. State, 707 So.2d 338, 338 (Fla. 2d DCA 1998) (internal quotations omitted). By the time Appellant gave.Ogletree the baggie of marijuana, four more police officers arrived on the scene and were involved in the investigation, a K9 unit alerted to possible contraband in the Taurus, and Ogle-tree had taken Appellant across the street to engage in further investigation. Thus, there is nothing in the record to suggest a break in the chain of illegality.
Because Ogletree had no justification for stopping the Taurus and because there was no break in the chain of illegality, Appellant’s motion to suppress should have been granted.
REVERSED AND REMANDED. .
LAWSON, C.J. and TORPY, JJ„ concur.