DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**J.H.**, a child,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-2466

[October 31, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Rosemarie Scher, Judge; L.T. Case No. 502016CJ001769A.

Carey Haughwout, Public Defender, and Virginia Murphy, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant challenges the trial court's denial of his motion to suppress evidence, which he claims was gathered after an unlawful stop without reasonable suspicion. Officers stopped appellant after a 911 caller from a restaurant, stated that drug dealers were out in front of the restaurant. Based upon the totality of the circumstances, we agree with appellant that the officer lacked reasonable suspicion to stop appellant. We reverse.

A dispatcher from the West Palm Beach Police Department received a 911 call mid-day from a person identifying herself as having a restaurant on Sapodilla Avenue in West Palm Beach. The caller reported that drug dealers were on the corner. She described them as three black males, two of whom were wearing white t-shirts. She did not describe any drug selling activity, but she said that as soon as they would see a police vehicle, they would disappear and come back immediately.[1] She said the drug dealers

---

[1] The trial court, as well as the parties, indicate that the caller stated the men were "selling" drugs. We have reviewed the record, and the caller never stated that she observed the men selling drugs. Rather, she said that "drug dealers are

moved between a few blocks around the restaurant. The caller complained that she had customers from all over South Florida, but as soon as they would see "that," the customers would be scared. The dispatcher told the caller that someone would be there to check things out.

An officer with some familiarity with the neighborhood, which she described as a high crime area, was dispatched to investigate a "suspicious person" call. According to the officer, she was told that there were three black males on the corner of 7th and Sapodilla possibly selling drugs. They were wearing t-shirts and shorts. However, the restaurant caller did not mention shorts in her 911 call. When the officer and her partner got to the corner, she observed one adult black male in a white t-shirt. When this individual saw the police vehicle, he began walking to the rear of the building, an apartment complex. There were no other persons in the area.

The officers exited their vehicle, started walking down the alley towards the building, and ordered the male to stop. He continued walking to the rear of the apartment complex. As the officer rounded the corner, she saw two black juvenile males, wearing no shirts and peeking into an apartment window. The officer recognized appellant, J.H., as one of the boys peeking into the window because he had been in the area on a prior call to which she had responded. The officer knew that J.H. lived in the apartment complex.

When the juveniles saw the officer, they began walking down the alley in the other direction. Then they saw another officer at the other end of the alley. At that point, they reached into their pockets, and the first officer ordered them to stop because she was nervous for her safety and that of other officers on the scene. The officer ordered J.H. to walk towards her and to take his hands out of his pocket. As he approached her, she saw a container in his hand. It was a white, cylindrical container with a red cap and appeared to be a Krazy Glue container with the label off. Based on her training and experience, she knew that these containers are commonly known to hold crack cocaine. She conducted a pat-down search of J.H. for weapons and found a handgun. She then arrested him. Prior to seeing the Krazy Glue container, the officer had witnessed no criminal behavior by J.H.

The State charged J.H. as a delinquent in possession of a firearm, possession of cocaine while in possession of a firearm, and carrying a

---

out there by 7th and Sapodilla." While the dispatcher asked "you said they were selling," the caller did not respond to this. Instead, she corrected her physical description of two of the men as being in white t-shirts.

concealed weapon. J.H. moved to suppress the cocaine and the gun, contending that their seizure was the result of a stop unsupported by reasonable suspicion. The State contended that the officers had received a call from a citizen informant, thus making the call on the higher end of reliability. Based upon the totality of circumstances, the officers had reasonable suspicion to stop J.H. and seize the drugs and weapon. The defense argued that the boys did not match the description given by the caller, and there was no reasonable suspicion to detain J.H. when the officers surrounded J.H. in the alley and ordered him to stop and to take his hands out of his pocket.

The trial court found that the 911 caller was a readily identifiable citizen informant because she gave the name of the restaurant and its address. As a citizen informant, the caller's information is at the high end of the reliability scale and can justify a reasonable suspicion. The court ruled that the officer had a reasonable suspicion, based on the content of the 911 call by a citizen informant, to detain J.H. Additionally, the court ruled that the action of all three of the suspects of reaching into their pockets, plus the sight of the glue container, which was commonly known to hold crack cocaine, justified a stop and frisk. Considering the totality of the circumstances, the higher veracity and reliability of the citizen informant, and the three men's actions in walking away and their subsequent actions in the alley, the court denied the motion to suppress.

Thereafter, J.H. entered a no contest plea and reserved the right to appeal the denial of his motion to suppress. The State conceded that the motion to suppress was dispositive. J.H. was adjudicated delinquent and sentenced to a non-secure residential program under the Department of Juvenile Justice. J.H. now appeals.

In reviewing a motion to suppress, "appellate courts . . . accord a presumption of correctness to the trial court's rulings on motions to suppress with regard to the trial court's determination of historical facts, but appellate courts must independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendment and, by extension, article I, section 9 of the Florida Constitution." *Connor v. State*, 803 So. 2d 598, 608 (Fla. 2001); *see also Ornelas v. United States*, 517 U.S. 690, 699 (1996). "The standard of review of the findings of fact is whether competent, substantial evidence supports the findings." *Hines v. State*, 737 So. 2d 1182, 1184 (Fla. 1st DCA 1999). But the courts review the trial court's application of the law to the facts de novo. *Id.*

There are three levels of police-citizen encounters: consensual encounters, investigatory stops, and full-blown arrests. *Popple v. State*,

626 So. 2d 185, 186 (Fla. 1993). "During a consensual encounter a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked." *Id.* During the second level of police-citizen encounter, an investigatory stop is involved. Police "may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime." *Id.* It "requires a well-founded, articulable suspicion of criminal activity." *Id.* The third level of police-citizen encounter, an arrest, "must be supported by probable cause that a crime has been or is being committed." *Id.* This case involves the second level of encounter and requires us to analyze whether the officer had a well-founded suspicion of criminal activity when she ordered J.H. to stop.

"Tips from known reliable informants, such as an identifiable citizen who observes criminal conduct and reports it, along with his own identity to the police, will almost invariably be found sufficient to justify police action." *J.L. v. State,* 727 So. 2d 204, 206 (Fla. 1998), *aff'd sub nom. Florida v. J.L.,* 529 U.S. 266 (2000). The trial court found that the 911 caller was a citizen informant. Even though she declined to give her name, her identity was readily ascertainable, as she gave the name of the restaurant from which she was calling. *See State v. Maynard,* 783 So. 2d 226, 230 (Fla. 2001) (finding that to qualify as a citizen informant, a person's name need not be known so long as the person's identity is readily discoverable).

However, "founded suspicion is dependent on *both* the informant's reliability *and* the content of the information she relays; courts consider both factors in determining whether the totality of the circumstances justifies a stop." *Ford v. State,* 783 So. 2d 284, 285 (Fla. 2d DCA 2001) (citing *Alabama v. White,* 496 U.S. 325, 329, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990)). In *Ford,* a citizen informant approached police and stated that she had just seen a black man approach an older white man in front of a store. *Id.* The white man put something in his pocket and handed the black man cash. *Id.* The informant believed she had witnessed a drug transaction. *Id.* Officers located Ford, the white man, and they stopped him, searched him, and found drugs. *Id.* In overturning the denial of a motion to suppress, the Second District determined that the citizen's information did not provide a founded suspicion to stop Ford. *Id.* at 286. The only information that the citizen conveyed was observing a white man hand a black man money and receive something in return, activity which was as consistent with legal behavior as it was with a drug transaction. *Id.* Thus, the officers did not have a founded suspicion to detain Ford.

4

Applying the analysis of *Ford* to this case, the information provided by the citizen informant was that three drug dealers, who were black men, were standing on the corner near her restaurant. The informant did not state how she knew they were drug dealers, nor did she state that she saw them selling drugs. At least two were wearing white t-shirts. They would move up and down the block, and when they saw a police vehicle, they would disappear, only to reappear after the police vehicle passed. This information does not describe any criminal activity at all, whether it is information supplied by a citizen informant or witnessed by police. "A hand-to-hand exchange can warrant a detention when a law enforcement officer sees what transpires and his training and experience lead him to believe he has witnessed a drug transaction." *Id.* However, if an officer merely saw individuals, whom the officer knew were involved with drugs, standing on a corner, and the only other activity that the officer witnessed were those individuals disappearing when a police vehicle passed, the officer may have a bare suspicion but not a founded suspicion that criminal activity was occurring.

Considering the totality of the circumstances, the remaining observations of the officer also do not provide founded suspicion to stop J.H. After following one white-shirted individual down the alley, the officer observed J.H. and another juvenile, both of whom were shirtless, looking into an apartment window. The officer did not testify that J.H. was known to have previously engaged in drug dealing; she merely knew that he lived in the apartment building. This information does not increase suspicion of drug dealing, nor does it match the description given by the citizen informant, who stated that at least two of the drug dealers wore white t-shirts. The informant never mentioned how the third was dressed. The fact that J.H. began to walk away from the officer, until he saw the other officer coming up the alley from the other direction, does not add anything to support founded suspicion, because "reasonable suspicion of criminal activity is not established simply because a defendant leaves the scene when an officer nears." *R.J.C. v. State*, 84 So. 3d 1250, 1256 (Fla. 4th DCA 2012). While "headlong flight" from an officer in a high crime area may warrant founded suspicion to justify a *Terry* stop, *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), this was not "headlong flight." *See also Lee v. State*, 868 So. 2d 577, 581-82 (Fla. 4th DCA 2004) (finding no evidence of "headlong flight" where man walked quickly away from other suspects when police arrived, but there was no other suspicious activity). J.H. was walking away from the officer in an alley in which his home was located.

The officer ordered J.H. to stop and then ordered him to take his hands out of his pocket before the officer observed the glue container which she testified was indicative of a drug container. She had no founded suspicion

5

of criminal activity prior to seeing the container.  In fact, she testified that she had seen nothing to suggest criminal behavior before seeing it.

J.H. was detained when the officer ordered him to stop.  Because the officer had no founded suspicion of criminal activity, the stop violated the Fourth Amendment.  We therefore reverse and remand with directions to dismiss the petition.

MAY and FORST, JJ., concur.

*          *          *

***Not final until disposition of timely filed motion for rehearing.***