727 So.2d 1050 (1999)
John WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 97-01048.
District Court of Appeal of Florida, Second District.
February 24, 1999.
*1051 Diane Shea Williams of Diane Shea Williams, P.A., Clearwater, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
WHATLEY, Judge.
In this appeal of his convictions of possession of cocaine and obstructing or opposing an officer without violence, John Williams contends that the trial court erred in denying his motion to suppress. We agree and reverse.
At the hearing on Williams' motion to suppress, Officer Alexander Rahmings testified that on October 20, 1996, at approximately 7:00 p.m., he was on uniform patrol in his police vehicle in Riverview Terrace, a public housing project. Rahmings observed Williams sitting alone on a wall. He stopped to question Williams because he thought "it was different for somebody to be sitting out there on that wall that particular day." Rahmings testified that this area was not known for drug activity, Williams was doing nothing wrong at the time, and Rahmings had no reason to believe Williams had any drugs or weapons on him.
Rahmings approached Williams and asked him to identify himself and explain what he was doing at this location. Williams identified himself and told Rahmings he was waiting for his aunt, who lived around the corner. Rahmings observed a set of keys and a piece of white paper towel in one of Williams' hands. Rahmings asked Williams if he had any drugs or weapons in his possession and Williams responded, "No." Rahmings then asked Williams if he could conduct a patdown search for drugs and weapons. Rahmings testified that Williams responded affirmatively and turned around and raised his arms as if giving consent to search. Williams testified that he asked Rahmings why he wanted to search him, and Rahmings turned him around and started searching him. Williams testified that he did not consent to the search, but acquiesced to the officer's show of authority because he believed he would get in trouble if he prevented Rahmings from searching him.
Rahmings testified that he conducted a patdown search of Williams while Williams had both arms raised in the air. As he was searching Williams, Rahmings asked him what he had in his left hand. Williams handed Rahmings some keys. Rahmings then asked Williams about the paper towel, and Williams said he did not have a paper towel. As Williams was saying this, he attempted to leave and lowered his arms out of Rahming's view. Rahmings believed Williams was moving *1052 his hands toward his waistband and he told Williams to let him see his hands. Williams refused and Rahmings grabbed Williams' left hand and proceeded to detain him for fear he might be going for a weapon in his waistband. Williams struggled to get free of Rahming's restraint and during this struggle Rahmings observed Williams tearing up the white paper towel, which fell to the ground. Rahmings then handcuffed Williams.
Rahmings testified that he felt no evidence of weapons during the patdown of Williams. He further testified that prior to handcuffing Williams, he saw no evidence of weapons or drugs. Upon retrieving the paper towel from the ground, however, he found that it contained what appeared to be, and apparently later tested positive as, a piece of rock cocaine.
The trial court denied the motion to suppress. Stating that it was close, the court found that the contact between Rahmings and Williams was a consensual encounter. The court stated that it believed that Rahmings grabbed Williams' arm based on safety concerns and not to obtain the paper towel. Williams pleaded no contest, specifically reserving his right to appeal the denial of his motion to suppress.
We agree with the trial court's finding that the encounter between Rahmings and Williams began as a consensual encounter. Both men testified that Rahmings approached Williams and asked him his name, address, and date of birth and that Williams answered these questions. Although the men's testimony is contradictory as to whether Williams consented to Rahmings' request to search him, a trial court's determination of the voluntariness of a consent to search is presumed correct unless clearly erroneous. See Davis v. State, 594 So.2d 264 (Fla.1992). We cannot say that the trial court's implicit determination that Williams voluntarily consented to the search was clearly erroneous. That determination was based on the credibility of the witnesses, and the court was in the best position to make that judgment.
We believe, however, that the trial court erred in not finding that Williams withdrew his consent to the search. Although Williams gave Rahmings the keys he had in his hand, he told Rahmings that he did not have a paper towel. Based on two very similar cases decided by this court, we hold that this response was the equivalent of a withdrawal by Williams of his consent to the search. In Parker v. State, 693 So.2d 92 (Fla. 2d DCA 1997), law enforcement engaged in a consensual encounter with Parker. After the officers asked Parker whether she had identification and what she was doing in the neighborhood, they asked her if she had any narcotics on her person, specifically in her bra. She responded that she did not, and the officers asked if she would shake her shirt and bra to prove that. Parker complied, but when a tissue fell to the ground, she placed her foot on it and tried to stomp on it. This court agreed with Parker's argument that when she placed her foot on the tissue, she withdrew her consent to the search.
In Jimenez v. State, 643 So.2d 70 (Fla. 2d DCA 1994), Jimenez consented to a patdown search in order to enter a dance. However, when the officer started to remove two cigarette packs from Jimenez's shirt pocket, Jimenez grabbed the officer's hand. This court held that at that point Jimenez withdrew his consent to the search.
We believe that Williams' statement to Rahmings that he did not have a tissue in his hand is the functional equivalent of the nonverbal withdrawals of consent in Parker and Jimenez. Our conclusion that Williams withdrew his consent is buttressed by the fact that when he told Rahmings he did not have a paper towel, Williams tried to leave the scene, which he had every right to do in the context of a consensual encounter.
We note that Rahmings testified that he saw no evidence of drugs prior to handcuffing Williams. Thus, he did not have probable cause to retrieve the paper towel despite Williams' withdrawal of his consent. See Parker, 693 So.2d at 94.
We hold that Williams' arrest was illegal and that it was error for the trial court to deny his motion to suppress. In light of this holding, we direct the trial court to *1053 dismiss the charge of obstructing or opposing an officer without violence because Florida law allows one who is illegally being arrested to resist that arrest without violence. See Mayhue v. State, 659 So.2d 417 (Fla. 2d DCA 1995); K.Y.E. v. State, 557 So.2d 956 (Fla. 1st DCA 1990).
Accordingly, we reverse Williams' convictions and remand with directions that he be discharged.
Reversed and remanded.
PARKER, C.J., and DANAHY, PAUL W., (Senior) Judge, Concur.