976 So.2d 1229 (2008)
Stevie R. ROBINSON a/k/a Stephen R. Robinson, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-4092.
District Court of Appeal of Florida, Second District.
March 28, 2008.
*1230 James Marion Moorman, Public Defender, and Alisa Smith, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Elba Caridad Martin, Assistant Attorney General, Tampa, for Appellee.
SALCINES, Judge.
Stevie R. Robinson entered a plea of no contest to drug and weapon charges while reserving the right to appeal the denial of his dispositive motion to suppress. As we conclude there was no probable cause for the search which resulted in the seizure of a firearm and marijuana, we reverse.

Evidence Presented to the Trial Court
At the motion to suppress hearing, Sarasota Police Officer Ronald Dixon testified that he and three other police officers conducted a "walk-through" in a parking lot behind a nightclub. The officer explained that a "walk-through" involves law enforcement officers walking through a public area to "make sure everything is on the up-and-up, no problems." On the evening in question there had been no complaints about any activity at the location; however, the parking lot was described as *1231 a "problem area" known for public drinking, narcotics, and fights.
The officers observed four individuals standing near a car in an unlit, back portion of the parking lot. As the officers approached, three of the individuals started to walk away. One individual, later identified as Robinson, did not move away but remained leaning against the rear of the car. Officer Dixon testified that the police officer walking immediately in front of him informed his fellow officers that he could smell marijuana. When Officer Dixon was within ten or fifteen feet of the car, he also could smell a strong odor of burned marijuana. Officer Dixon conceded that as he approached he did not see any individual smoking marijuana nor could he smell the odor of marijuana coming from any particular individual. He reported, "It was like a cloud hanging over them," but he could not recall actually observing any smoke.
Each of the officers approached one of the four individuals. Officer Dixon testified that as he approached Robinson he did not smell the odor of marijuana on Robinson's person. When asked for identification, Robinson cooperated and supplied it. It was determined that Robinson had no outstanding warrants. However, Officer Dixon testified that at this point Robinson was not free to leave. Based on the odor of burned marijuana, Officer Dixon had resolved to search Robinson to see if he was in possession of marijuana. No testimony was presented that Officer Dixon suspected Robinson was in possession of a weapon or that he thought a pat-down search for officer safety was necessary.
Officer Dixon asked Robinson for consent to search. Robinson initially consented. However, when Officer Dixon informed Robinson that he needed to turn around for the search, Robinson responded, "No, you can search me right where I am." The officer testified that he believed Robinson refused to move because he was hiding marijuana behind his back. Officer Dixon then ordered Robinson to turn around, and Robinson reluctantly complied.
During the pat-down search, Officer Dixon observed a bulge in Robinson's back pocket. When he felt the pocket, the officer immediately recognized the object was metal in the shape of a gun. The weapon was seized. After Robinson's arrest, a further search revealed marijuana in Robinson's front pants pocket.

Motion to Suppress
Robinson filed a motion to suppress in which he argued that he had not consented to the search of his person and that the generalized odor of marijuana did not justify a search of all the individuals in the parking lot. He claimed that without a particularized odor of marijuana on a specific individual located in a public place, the officers did not have reasonable suspicion or probable cause to search.
In response, the State argued that when officers approach a group of individuals and an odor of marijuana cannot be attributed to any one of them, there is probable cause to search all the individuals to see if any of them are in possession of marijuana. The State cited to Green v. State, 831 So.2d 1243 (Fla. 2d DCA 2002), to support its argument.[1]
*1232 In denying the motion, the trial court was not persuaded by the State's argument. Instead, it noted that Robinson admitted that the odor of marijuana was in the air and held that the marijuana odor gave the officers "some reasonable suspicion to at least approach." The trial court found that Robinson's consent to search had been withdrawn. However, it determined that when Robinson originally consented to be searched but refused to turn around, the officer's reasonable suspicion was "heightened." It concluded that the officer surmised Robinson was hiding marijuana "and I think [the refusal to turn around] increased his reasonable suspicion, which makes it in the area of the stop issue which I think makes it a legitimate search, so I deny the motion."

Law Enforcement Encounters
There are three levels of law enforcement encounters: (1) a consensual encounter, (2) an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and (3) an arrest. Golphin v. State, 945 So.2d 1174, 1180 (Fla.2006), cert. denied, 128 S.Ct. 40, 169 L.Ed.2d 11 (2007). A consensual encounter involves only minimal law enforcement contact, and a citizen may either voluntarily comply with a law enforcement officer's requests or choose to ignore them. Popple v. State, 626 So.2d 185, 186 (Fla.1993). A law enforcement officer may reasonably detain a citizen temporarily for an investigatory stop if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. Id.; see § 901.151, Fla. Stat. (2005) ("Florida Stop and Frisk Law"). An investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough. Popple, 626 So.2d at 186; Newkirk v. State, 964 So.2d 861, 863 (Fla. 2d DCA 2007). During an investigatory stop the officer may temporarily detain the individual to ascertain his or her identity and the circumstances surrounding the person's presence at the location which led to the officer's suspicions. § 901.151(2). An arrest at any time after the investigatory stop is permissible if supported by probable cause that a crime has been or is being committed. § 901.151(4); Popple, 626 So.2d at 186.

Consensual Encounter
In the instant case, when the officers first observed the men standing in the public parking lot, there was no suspicion of any criminal behavior. Officer Dixon testified that the officers determined they would engage in a consensual encounter with the men. The trial court concluded that the actions of the police officers in approaching the men constituted a valid consensual citizen's encounter.

Probable Cause
When a law enforcement officer has validly stopped an individual, he may conduct a pat-down search if the officer has probable cause to believe that the individual is armed with a dangerous weapon and poses a threat to the officer or any other person. § 901.151(5). In the present case, there was no testimony that Officer Dixon believed *1233 Robinson was armed or posed a threat to anyone.
An officer also may conduct a warrantless search of an individual when there is probable cause to arrest. Blake v. State, 939 So.2d 192, 197 (Fla. 5th DCA 2006). It is the probability, and not a prima facie showing, of criminal activity that is the standard when reviewing a finding of probable cause to arrest an individual. Simmons v. State, 934 So.2d 1100, 1114 (Fla.2006). The totality of the circumstances must be considered. Id. However, the State has the burden to prove that the officer had probable cause, and the proof must be more than the "naked subjective statement of a police officer who has a `feeling' based on `experience' that the accosted citizen is committing a crime." Coney v. State, 820 So.2d 1012, 1014 (Fla. 2d DCA 2002) (quoting Doctor v. State, 596 So.2d 442, 445 (Fla.1992)). An officer's mere suspicion that a person is carrying illegal drugs is insufficient to supply probable cause for a search. State v. Witherspoon, 924 So.2d 868, 871 (Fla. 2d DCA 2006).
Another manner to uphold a warrantless search of an individual is when there has been a voluntary consent to the search. V.H. v. State, 903 So.2d 321, 322 (Fla. 2d DCA 2005). However, once an individual consents to a search, he or she has the right to withdraw that consent. Smith v. State, 753 So.2d 713, 715 (Fla. 2d DCA 2000); Williams v. State, 727 So.2d 1050, 1052 (Fla. 2d DCA 1999). When an individual revokes his or her previously given consent, that consent cannot thereafter act as the basis for upholding a further search. E.B. v. State, 866 So.2d 200, 203 (Fla. 2d DCA 2004) (holding search illegal because at the moment E.B. withdrew his consent by his nonverbal conduct, the officer did not have information sufficient to meet the probable cause requirement to further detain E.B.).
In the present case, the trial court noted that there was no evidence that Officer Dixon believed Robinson was armed, but the officer thought Robinson was concealing marijuana. The trial court concluded, as a matter of law, there was sufficient probable cause for the officer to search Robinson based on the odor of burned marijuana in the air and Robinson's action of withdrawing his consent to search. As a review of the above-stated law establishes, this determination was erroneous.

Conclusion
We conclude that there was no probable cause to support the warrantless search of Robinson's person which yielded the firearm and the marijuana. The fact that Robinson was standing with a group of men surrounded by the odor of burned marijuana was insufficient to supply more than a "mere suspicion" that Robinson was in possession of marijuana. The fact that Robinson initially consented to a search of his person and then withdrew that consent did not give the officer probable cause to search for marijuana.
Accordingly, we reverse the denial of the motion to suppress and the resulting judgments and sentences for felon in possession of a weapon, carrying a concealed weapon, and possession of marijuana.
Reversed and remanded.
KELLY and LaROSE, JJ., Concur.
NOTES
[1] In fact, the Green opinion supports Robinson's motion to suppress. The facts in Green are similar to those involved in the present case in that Green was not observed to be engaged in any criminal activity:

Here, Officer Schantz specifically observed that the smoke was coming from [co-defendant] Mr. Brown, that he and [co-defendant] Mr. Cooper discarded the marijuana cigar and the baggie containing marijuana, and that Mr. Green was simply standing with them. Green did and said nothing that gave the officers probable cause to believe that Green possessed illegal drugs or that he was armed or dangerous so as to justify a pat-down. Because the officers had no basis to search Green, the search and subsequent seizure of the contraband from him were illegal and the evidence that was confiscated should have been suppressed.
Green, 831 So.2d at 1245-46 (emphasis added, citations omitted). Nothing gave the officer probable cause to justify a pat-down search of Green or the subsequent seizure of contraband because there was no basis for the search. Id. at 1245-46. The denial of Green's motion to suppress was reversed. In the case before us, Robinson, like Green, was not observed to have been involved in any direct criminal activity because Officer Dixon did not perceive the odor of marijuana on his person, and Robinson was merely standing in an area where the odor of burned marijuana was present.