ROTHENBERG, J.
D.H. appeals the trial court’s order denying his motion to suppress a firearm and marijuana found in his possession after a pat-down search conducted during an investigatory stop. Because there was no reasonable suspicion to believe D.H. was armed with a dangerous weapon, or probable cause for an arrest when the pat-down was conducted, we reverse and remand with directions that D.H. be discharged.
BACKGROUND
Based on several recent gang-related shootings in the Cloverleaf area of Miami Gardens, a “high crime area,” the Miami Gardens Police Department began covertly monitoring the area to prevent criminal activity, particularly violent crime. At approximately eleven o’clock on the night D.H. was arrested, Officer Rosado was in a parking lot in the Cloverleaf area in an unmarked patrol car when he observed three or four juvenile males in the parking lot only a few feet from where Officer Rosado’s patrol car was located.
After observing the group for a while, Officer Rosado exited his vehicle, and immediately smelled what he recognized as burnt marijuana emanating from the area near the group of juveniles. Officer Rosa-do testified that he was familiar with the smell based on his years of training and experience in law enforcement. He did not see anyone smoking marijuana, passing marijuana, concealing baggies, or using a lighter, although he did notice a “puff of smoke” hanging in the air near the juveniles. As he approached the group, the smell of marijuana became stronger.
Without asking any questions or investigating the marijuana smell further, Officer Rosado requested back-up assistance and conducted a pat-down search of the individuals to check for weapons due to his safety concerns, which were primarily motivated by the area’s history of gun-related violence. During the pat-down, Officer Rosado felt a hard bulge in D.H.’s left front jacket pocket. Because Officer Ro-sado believed the object he felt was a firearm, he placed D.H. on the ground and detained D.H. and two other juveniles at gunpoint until backup arrived. When backup arrived, Officer Rosado continued the search, handcuffed D.H., and verified that the bulge in D.H.’s jacket pocket was in fact a .38 caliber revolver-style pistol. *79 D.H. was arrested, and a search incident to the arrest revealed a small baggie of marijuana in D.H.’s pocket as well. D.H. was charged with (1) carrying a concealed firearm, (2) being a minor in possession of a firearm, and (3) possession of cannabis.
After conducting a hearing on D.H.’s motion to suppress the evidence, the trial court found that although the pat-down was not supported by reasonable suspicion that D.H. was armed, the search was lawful because Officer Rosado possessed probable cause to arrest D.H. for possession of marijuana. The parties stipulated that the motion to suppress was dispositive, and D.H. pled nolo contendere to the charges, reserving his right to appeal the trial court’s ruling denying his motion to suppress the evidence.
DISCUSSION
Although we agree with the trial court that there was insufficient evidence to justify a pat-down search of D.H. based on a reasonable suspicion that D.H. was armed and dangerous, we disagree that the search was otherwise lawful based on probable cause that D.H. was in possession of marijuana.

I. Standard of Review

“[A] trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Pagan v. State, 830 So.2d 792, 806 (Fla.2002) (citing Murray v. State, 692 So.2d 157 (Fla.1997)). The appellate court should review findings of historical fact only for clear error and give due weight to inferences drawn from those facts by resident judges and local law enforcement officers. Jenkins v. State, 978 So.2d 116, 122 (Fla.2008) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). Applying those facts to determinations of reasonable suspicion and probable cause, however, are reviewed de novo on appeal. Id.

II. Searches

The Florida Supreme Court has identified three basic categories of police-citizen encounters, each having its own specific burden of proof to justify a search or seizure. Popple v. State, 626 So.2d 185, 186 (Fla.1993). The first, and least onerous type, is a consensual encounter. Id. Consensual encounters involve minimal police contact and the citizen is free to leave of his own volition. Id. Because there is no detention during such encounters, constitutional safeguards do not apply. Id.
The second type of encounter is an investigatory stop. Id. This category of search arises from the seminal United States Supreme Court case Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and was codified by the Florida legislature in section 901.151 of the Florida Statutes. See State v. Webb, 398 So.2d 820, 821-25 (Fla.1981) (discussing the history of Florida’s stop and frisk statute, as well as its interpretation). Although investigatory stops are less intrusive than a full search incident to an arrest, they still require an officer to have reasonable suspicion that a suspect has committed, is committing, or is about to commit a crime before the stop can constitutionally occur. § 901.151(2), Fla. Stat. (2011); Popple, 626 So.2d at 186. An officer having reasonable suspicion “may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person’s presence abroad which led the officer to believe that the person had com *80 mitted, was committing, or was about to commit a criminal offense.” § 901.151(2).
During an investigatory stop, an officer may conduct a “stop and frisk” or pat-down of the suspect if the officer has a reasonable belief that the suspect “is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person....” § 901.151(5). A pat-down search conducted during an investigatory stop must be based specifically on the reasonable belief that the suspect is armed and dangerous, and not simply on the reasonable suspicion that justified the investigatory stop at the outset. Webb, 398 So.2d at 822.
The final category of encounter is an actual arrest, which requires probable cause that a crime has been or is being committed. Popple, 626 So.2d at 186. Officers may conduct a search of a suspect incident to a lawful arrest, which is per se constitutionally permissible and reasonable under the Fourth Amendment, because such searches are necessary to protect police officers and preserve evidence. Jenkins, 978 So.2d at 125 (quoting United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 494, 38 L.Ed.2d 427 (1973)). Searches incident to an arrest may be conducted contemporaneous with or prior to the actual arrest so long as probable cause for the arrest existed at the time of the search. Jenkins, 978 So.2d at 126 (citing Rawlings v. Kentucky, 448 U.S. 98, 111 & n. 6, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)).

A. Whether the pat-down search of D.H. was supported by reasonable suspicion to believe he was armed and dangerous.

D.H. does not dispute, and we find, that the police encounter in this case was an investigatory stop supported by reasonable suspicion. Investigatory stops, however, are only for the limited purpose of discovering the suspect’s identity and briefly investigating the circumstances supporting the reasonable suspicion. Id. Should the detainee’s responses or actions during a limited investigatory stop give rise to heightened suspicion rising to the level of probable cause, the stop can blossom into an arrest and search based on that probable cause. § 901.151(3), (4); United States v. Sokolow, 490 U.S. 1, 12-13, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (“The rationale for permitting brief, war-rantless seizures is, after all, that it is impractical to demand strict compliance with the Fourth Amendment’s ordinary probable-cause requirement in the face of ongoing or imminent criminal activity demanding ‘swift action predicated upon the on-the-spot observations of the officer on the beat.’ Observations raising suspicions of past criminality demand no such immediate action, but instead should appropriately trigger routine police investigation, which may ultimately generate sufficient information to blossom into probable cause.” (internal citations omitted)). Absent such exacerbating evidence though, the investigatory stop must terminate. § 901.151(4).
To justify a pat-down search during an investigatory stop, however, the officer must have reasonable belief that the suspect is armed. § 901.151(5). Such reasonable belief cannot be based on a mere suspicion or hunch, but must be supported by some objective basis such as aggressive activity or seeing a bulge prior to the pat-down. See Robinson v. State, 976 So.2d 1229, 1232-1233 (Fla. 2d DCA 2008) (finding no reasonable belief or probable cause based solely on the suspect’s location in a “high-crime area”).
Here, Officer Rosado approached the young men based on the smell of marijua *81 na in the air. Although this observation constituted reasonable suspicion that someone in the group possessed marijuana justifying the investigatory stop, Officer Rosado exceeded the scope of the investigatory stop when he conducted a pat-down search of D.H. because a pat-down search during an investigatory stop may only be conducted based on an objectively reasonable belief that D.H. was armed and dangerous.
Whether or not an officer reasonably believes that a suspect is armed and dangerous must be determined by the totality of the circumstances. Hernandez v. State, 784 So.2d 1124, 1126 (Fla. 3d DCA 1999) (citing Alabama v. White, 496 U.S. 325, 330-31, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). The relevant circumstances in the instant case are that: it was late at night; the area was dark; the location was known for gun-related crimes; and the officer was outnumbered by either three or four to one. However, the record also reflects that there was nothing about D.H.’s appearance, behavior, or manner, or about the situation itself that led Officer Rosado to believe that D.H. was armed, and it is undisputed that D.H. did not attempt to flee as Officer Rosado approached. D.H. was cooperative, he made no furtive movements, and Officer Rosado saw no “bulge” or any other indication that D.H. was armed or dangerous. Furthermore, at the time of the pat-down, the only crime Officer Rosado suspected the boys had committed was possession of marijuana, an activity that is not considered inherently dangerous or which would justify an inference that any of the juveniles was armed or dangerous.
Based on the totality of the circumstances, including that D.H. exhibited no suspicious behavior to justify a reasonable belief that he was armed or dangerous, a pat-down search conducted for officer safety was not justified in this case.

B. Whether the pat-down search of D.H. was justiñed based on probable cause that he had committed a crime.

“The existence of probable cause is measured by an objective standard, not based on an officer’s underlying intent or subjective motivation.” Hernandez v. State, 784 So.2d at 1128 (quoting State v. T.P., 588 So.2d 286, 287 (Fla. 3d DCA 1991)). If probable cause exists to arrest a suspect, an officer may conduct a search of the suspect incident to the lawful arrest. Jenkins, 978 So.2d at 125 (citing United States v. Robinson, 414 U.S. at 235, 94 S.Ct. 494). Searches incident to an arrest may be conducted prior to or contemporaneous with the actual arrest so long as probable cause for the arrest existed at the time of the search. Jenkins, 978 So.2d at 126 (citing Rawlings v. Kentucky, 448 U.S. 98, 111 & n. 6, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)).
The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. And this means less than evidence which would justify condemnation or conviction, [but] more than bare suspicion: Probable cause exists where the facts and circumstances within their (the officers’) knowledge and of which they had reasonably trustworthy information are sufficient in themselves •to warrant a man of reasonable caution in the belief that an offense has been or is being committed.
Jenkins, 978 So.2d at 121 (alteration in original) (quoting Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). Whether or not probable cause exists in a particular case is fact-specific, and there is no bright line for when it will be found:
*82 The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfin-ders are permitted to do the same — and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. ... [Pjrobable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.
Jenkins, 978 So.2d at 121-22 (alteration in original) (quoting Illinois v. Gates, 462 U.S. 213, 231-32, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
The State claims that there was probable cause to arrest D.H. based on the smell of burnt marijuana coming from the group of juveniles and the smoke lingering over their heads. We disagree. The mere scent of marijuana coming from a group of individuals does not by itself give an officer probable cause to arrest and search any particular individual in the group. A finding of probable cause must be particularized to a specific individual. See Ybarra v. Illinois, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (holding that “a person’s mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.... Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.”); Perry v. State, 916 So.2d 835, 838-39 (Fla. 2d DCA 2005).
The Second District reached the same conclusion in Robinson v. State, 976 So.2d 1229 (Fla. 2d DCA 2008). In Robinson, while patrolling behind a night club in a high-crime area, police officers smelled marijuana and observed four men loitering in a group. Id. at 1230-31. As the officers approached, the marijuana smell became stronger and the officers saw “a cloud [of smoke] hanging over them.” Id. at 1231. Three of the four men began to walk away; only Robinson remained. Id. The officers testified that as they got closer they did not smell the odor of marijuana specifically on Robinson himself. Id. One of the officers detained Robinson and asked if he would consent to a search. Id. Although Robinson initially replied in the affirmative, when the officer told Robinson to turn around, Robinson revoked his consent. Believing that Robinson was hiding marijuana behind his back, the officers searched Robinson and found marijuana and a handgun on his person. Id. The Second District concluded that “[t]he fact that Robinson was standing with a group of men surrounded by the odor of burned marijuana was insufficient to supply more than a ‘mere suspicion’ that Robinson was in possession of marijuana,” and the appellate court reversed the lower court’s denial of Robinson’s motion to suppress. Id. at 1233.
Similarly, in Green v. State, 831 So.2d 1243, 1246 (Fla. 2d DCA 2002), the Second District reversed a trial court’s order denying Green’s motion to suppress a baggie of marijuana and crack cocaine found tucked into Green’s underwear discovered during a pat-down search. The officers in Green observed four men outside an apartment building with a cloud of smoke lingering over their heads. Id. at 1244. One of the men, Brown, was seen smoking a marijuana cigarette and then discarding a baggie, which contained marijuana. Id. As the officers approached, they also saw one of the other members of the group, *83 Cooper, discard a baggie of marijuana. Id. Although Green was not seen smoking or discarding anything, he was patted down and a small baggie of marijuana and crack cocaine was found in Green’s underwear. Id. In concluding that the pat-down search of Green was unlawful, the Second District distinguished the search of Green from the search conducted in State v. Hernandez, 706 So.2d 66 (Fla. 2d DCA 1998), where the pat-down search of Hernandez was upheld. The Second District noted that in Hernandez the police were able to follow and directly attribute the smell of marijuana to Hernandez, id. at 66-67, whereas in Green the officers saw two members of the group — but not Green himself — either smoking or discarding baggies containing marijuana. Green, 831 So.2d at 1244. Although recognizing that the smell of burnt marijuana on a person may establish probable cause for a search, the Second District found that because there was evidence directly linking the smell of marijuana to individuals other than Green, and no evidence directly linking Green, the officers lacked probable cause to believe that Green was also in possession of marijuana. Id. at 1245-46; see also A. T. v. State, 93 So.3d 1159, 1161 n. 1 (Fla. 4th DCA 2012) (“[T]he odor of marijuana emanating from the general area where appellant and two other individuals were standing did not provide the officer with reasonable suspicion to detain appellant.”).
Because the only facts justifying the search in this instance were the general smell of marijuana in the area and the sight of a puff of smoke lingering in the air around the group, there was insufficient justification for the search, and the search of D.H. was unlawful.
CONCLUSION
Although Officer Rosado had reasonable suspicion to conduct an investigatory stop based on the odor of marijuana emanating from the group of juveniles, he exceeded the scope of the investigatory stop when he conducted a pat-down search of D.H. The pat-down search was not justified by a particularized and articulable reasonable belief that D.H. was armed and dangerous, and was therefore unlawful. Additionally, without more, the odor of marijuana coming generally from the group did not give rise to probable cause to arrest and search D.H. or any other individual in the group. We therefore reverse the denial of D.H.’s motion to suppress the evidence and we remand with directions to discharge D.H. forthwith.
Reversed.