ROTHENBERG, J.
Harvey Abraham (“the defendant”) appeals his convictions and sentences for leaving the scene of an accident causing death and tampering with physical evidence. The defendant contends on appeal that (1) the trial court erred by denying the motion to suppress his statements^ which the defendant claims were procured after he was unlawfully seized by the police; and (2) he was deprived of a fair trial when two of the State’s witnesses improperly testified regarding the ultimate issue of whether the defendant knew he had struck a person with his vehicle when he left the scene of the accident. Because we find that the seizure of the defendant was supported by probable cause and the ultimate opinion testimony was not fundamental error, we affirm.
The defendant struck and killed eleven-year-old A.V. with his F-150 pickup truck on the evening of January 8, 2009, and then subsequently fled the scene of the accident. A.V. was approximately four feet, seven inches tall, wearing a pink jacket, and had been standing in the median between roadways before darting out in front of the defendant’s vehicle. Experts agreed that the defendant would not have been physically able to stop his vehicle in time to avoid striking A.V. when she stepped into the roadway, making the collision itself a tragic accident. The defendant’s failure to stop at the scene after striking A.V., however, converted the incident from an unfortunate tragedy into a crime.
After the accident, Detective Raul Hernandez, along with several Miami-Dade Police Department officers, responded to the scene and began investigating the physical evidence and interviewing witnesses to determine the identity of the driver, which was at that point unknown. Several witnesses and tipsters informed Detective Hernandez that the vehicle that struck A.V. was a white or gray Ford F-150 pickup truck and that the driver had slowed down after striking A.V., did not stop, and then sped away.
Approximately one week later, on January 16, 2009, Detective Hernandez received a tip that a white F-150 pickup truck with substantial damage to its grill and hood was parked on the side of the road in South Miami. Detective Hernandez investigated and confirmed that the vehicle was in fact the one that had struck and killed A.V. by matching pieces of the truck’s front grill left at the scene of the accident to pieces missing from the F-150 pickup truck and by noting pink fibers stuck to the front of the F-150 that appeared to have come from the pink jacket A.V. was wearing at the time of the accident.[1]
The F-150 pickup truck was parked directly in front of an auto body shop owned by Mr. Morejon, who told Detective Hernandez that the defendant had brought the truck to him for repairs on January 9, 2009, the day after the fatal accident that killed A.V. Mr. Morejon also told Detective Hernandez that the defendant had claimed someone had hit the defendant’s truck after he parked it on the side of the road — a story that could not be true since Detective Hernandez knew the truck had been involved in a hit and run less than a day before the defendant took it to Mr. Morejon. After speaking to Mr. Morejon, *494 Detective Hernandez called for backup and asked Mr. Morejon to contact the defendant in order to get him to come to the body shop. Mr. Morejon obliged.
The defendant agreed to meet Mr. Mo-rejon at his garage, and, upon the defendant’s arrival, Detective Hernandez approached the defendant and told him he was investigating a hit and run and that he would like to speak with the defendant about it. The defendant agreed to go with Detective Hernandez to the police station. Detective Hernandez stated that the defendant was most likely handcuffed prior to being placed in the officer’s vehicle for safety reasons because there was no “cage” between the front and back seat of his unmarked police vehicle.
Upon arriving at the police station, the defendant was taken to a small interrogation room and shackled to the floor. Detective Hernandez then read the defendant his Miranda[2] rights, and the defendant signed a Miranda rights waiver form. After speaking with Detective Hernandez, the defendant confessed that he was the one driving the vehicle at the time it struck A.V., that he subsequently returned to the scene of the accident and saw evidence of what had occurred, and that he told Mr. Morejon that another driver had hit his truck after he had parked it on the street. However, the defendant claimed that he had not known he had hit a person until he was arrested. After the defendant’s statement, Detective Hernandez formally arrested and charged the defendant with leaving the scene of an accident causing death, careless driving, and tampering with physical evidence.[3]
The defendant moved to suppress all statements made during his interview with the police as fruit of an illegal arrest. At the suppression hearing, the defendant argued that he was de facto arrested at the time he was handcuffed and taken into custody at Mr. Morejon’s garage and that the arrest was not supported by probable cause because Detective Hernandez had no way of knowing who was driving the F-150 pickup truck at the time of the accident. The trial court denied the motion to suppress the statements, finding that the confinement of the defendant prior to the Miranda warnings being administered and the formal arrest of the defendant was supported by probable cause.
At trial, the defendant stipulated to all elements of the crimes charged except for the element that he knew or should have known that he had hit a person. The defendant’s sole argument at trial was that he knew he had hit something, perhaps a curb or an animal, but that he did not know that the “something” he had hit was a person. He therefore claimed that he did not have the requisite intent to have violated the statute requiring motorists to remain at the scene of an accident causing injury or death. See § 316.027, Fla. Stat. (2009).
At trial, the State introduced the defendant’s statement, in which he confessed that he was afraid that he may have hurt someone and that he did not report the accident because he was afraid it would destroy his family. The State also introduced the statement the defendant made to Mr. Morejon wherein he told Mr. More-jon that someone else had hit his truck while it was parked — an obvious lie — as well as the physical evidence and testimony from several officers. Detective Hernandez and Detective Perez, an expert specializing in recreating accident scenes, testified that, in them opinion, the defen *495 dant would have known he had hit a person when he struck A.V. The jury ultimately convicted the defendant of both charged offenses, and the defendant was sentenced to six years in state prison. This appeal followed.
The defendant’s primary argument on appeal is that although he was not “formally arrested” until after his interrogation at the police station, he was effectively under arrest for Fourth Amendment purposes when the officers took him into custody at Mr. Morejon’s garage and there was no probable cause to support his arrest at that time because Detective Hernandez had no way of knowing who was driving the vehicle at the time of the accident. Further, the defendant contends that if there was no probable cause for the arrest, the arrest was an illegal seizure, and any evidence obtained therefrom, including the defendant’s confession, was inadmissible. Although we agree with the defendant that his pre-Miranda confinement was the functional equivalent of an arrest, no Fourth Amendment violation occurred because the confinement was supported by probable cause.
The determination of whether a defendant has been arrested or seized rests on “whether, based on the totality of the circumstances, a reasonable person would feel that his freedom of movement has been restricted to a degree associated with an actual arrest.” Caldwell v. State, 41 So.3d 188, 197 (Fla.2010) (citing Ramirez v. State, 739 So.2d 568, 573 (Fla.1999)). In other words, the determinative issue is whether a reasonable person in the defendant’s position would feel free to break contact with the police and leave of his own volition. See Popple v. State, 626 So.2d 185, 186 (Fla.1993) (explaining the three levels of police-citizen encounters); D.H. v. State, 121 So.3d 76, 79-80 (Fla. 3d DCA 2013) (analyzing the same). Here, although the defendant’s initial contact with law enforcement was a consensual encounter, once he was handcuffed, placed in the back of the officer’s car, taken to the police station, and placed in a locked interrogation room and shackled to the floor, the defendant was seized for Fourth Amendment purposes. Certainly based on the totality of these circumstances, no reasonable person would feel free to leave.
The Fourth Amendment is not violated, however, if the seizure of the defendant was supported by probable cause. Popple, 626 So.2d at 186; D.H., 121 So.3d at 80. Probable cause exists where the totality of the circumstances indicates that it is more likely than not the defendant has committed a crime. State v. Hankerson, 65 So.3d 502, 506 (Fla.2011); Elliott v. State, 597 So.2d 916, 918 (Fla. 4th DCA 1992). We find that the evidence submitted by the State was legally sufficient to establish probable cause in this case.
Prior to the seizure of the defendant, Detective Hernandez had determined that someone driving a white or gray F-150 pickup truck had struck and killed A.V. and that the driver had fled the scene of the accident without stopping. He had also determined that the F-150 pickup truck in front of Mr. Morejon’s garage was the vehicle that had been involved in the accident because it had damage to the grill and hood consistent with the accident that caused A.V.’s death; pieces of the F-150 recovered from the scene of the accident matched the missing pieces from the F-150 found in front of Mr. Morejon’s garage; and strands of pink fiber that seemed to have originated from the jacket A.V. was wearing at the time of the accident were still stuck to the F-150’s grill and bumper. Additionally, after speaking to Mr. Morejon, Detective Hernandez learned that the defendant owned the F-150 involved in the accident, he had dropped the F-150 off for repairs the day after A.V. was killed, and the defendant *496 had told Mr. Morejon that he had parked the truck on the street the night before and another driver had struck it. The defendant’s statement to Mr. Morejon the day after the accident placed the defendant, not some other driver, in possession of the F-150 when it was damaged, and Detective Hernandez knew that the damage occurred while it was being driven, not after the defendant parked it. Based on the totality of the evidence, it is clear that Detective Hernandez had probable cause to arrest the defendant for the crimes for which he was ultimately charged and convicted. The trial court therefore did not err by denying the defendant’s motion to suppress his statement..
The defendant has also raised the argument that Detectives Hernandez and Perez provided improper opinion testimony regarding whether the defendant knew or should have known he had struck a person when he hit A.V. However, as the defendant’s appellate counsel candidly concedes, because the defendant’s trial counsel did not object to this testimony, the defendant must establish that fundamental error occurred to be entitled to a new trial. See J.B. v. State, 705 So.2d 1376, 1878 (Fla.1998) (holding that unpreserved error may be raised on appeal only if it is so fundamental that it “goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process”). The record reflects that the opinion testimony provided by Detective Perez was not error, let alone fundamental error, since he was permitted to render his opinion on that issue as an accident reconstruction expert, and Detective Hernandez’s testimony, if error, was not fundamental error.
Affirmed.

. These fibers were subsequently sent to a police laboratory, and testing confirmed that the fibers originated from A.V.’s pink jacket.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. The careless driving charge was dropped before trial and is not at issue in this appeal.